**In re James Eugene McMINN, Lana Sue McMinn, Debtors.**

**Bankruptcy No. 80–40013.**

United States Bankruptcy Court, D. Kansas.

April 28, 1980.

Ted Hollembeak, Emporia, Kan., for creditor, Lyon County State Bank.

Thomas A. Valentine, Topeka, Kan., for debtor.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

James Eugene McMinn and Lana Sue McMinn, husband and wife, filed a Chapter 13 petition and plan. The plan provided full payment to a secured creditor outside the plan and to an unsecured creditor within the plan and 1% payment to one or more unsecured creditors within the plan. One of the latter creditors, the Lyon County State Bank, objects to confirmation of the plan specifying as grounds that the debtors' plan is not proposed in good faith and the distribution to the Bank is less than it would receive in a Chapter 7 case.

The parties appeared at the confirmation hearing on February 26, 1980, advised the Court that the issue presented was one of law and that all facts pertinent to a decision were stipulated. The parties were given an opportunity to submit legal memoranda and the time for doing so has expired without receipt of a memorandum from either party.

## FINDINGS OF FACT

The debtors filed a Chapter 13 petition on January 4, 1980. The plan filed with the petition provided for a 1% payment to two unsecured creditors, full payment to secured creditors and payment of $500 to debtors' attorney. The debtors listed their total indebtedness as $85,535. The debt is divided as follows: $41,000 first mortgage on real property to be paid outside the plan; $500 to be paid in full to debtors' attorney through the plan; $44,000 due on a judgment owed to the plaintiff and $35 in court costs attributable to the case in which the judgment was rendered to be paid 1% through the plan.

The Bank filed its objection to confirmation of the debtors' plan on February 19, 1980 and specified as grounds for objection non-compliance with 11 U.S.C. § 1325(a)(3) and (4). Essentially the Bank maintains that the judgment it possesses is of the type which would be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) and that the debtors' plan, as it relates to the making of a 1% payment in an attempt to discharge the debt to the Bank, is not proposed in good faith.

The debtors agree that the judgment held by the Bank is of the type which would be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). The debtor, James E. McMinn, entered in a "Stipulation and Admission of Facts" which was merged into the April 13, 1978 state court judgment held by the Bank. In this document, the debtor admitted that the judgment rendered in the Bank's favor was nondischargeable in bankruptcy and agreed that the stipulation and admission could be introduced in evidence without objection in any bankruptcy hearing.

Subsequent to the joining of these issues, the debtors amended their plan to include payment to another unsecured creditor in full outside the plan for the reason that the payment is to debtor's employer and has already been made. The Bank objected to the modification on the same grounds as have previously been set forth.

**152**

Though the judgment is against only Mr. McMinn, Mrs. McMinn has no income and thus alone could not qualify under present circumstances for relief under Chapter 13.

## ISSUES

Is a 1% payment plan to an unsecured creditor in full satisfaction of a judgment which would be nondischargeable pursuant to 11 U.S.C. § 523(a)(2) a plan proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3)?

Does a plan proposing to pay 1% in full satisfaction to an unsecured creditor possessing a nondischargeable judgment or claim under 11 U.S.C. § 523(a)(2) meet the requirements of 11 U.S.C. § 1325(a)(4)?

## CONCLUSIONS OF LAW

This case, as well as many others presently arising under the new Code, is a case of first impression. It would appear that if confirmation is granted, assuming that the debtors are able to successfully pay in their 1% plus administrative expenses and attorney fees, discharge would as a matter of course be granted pursuant to 11 U.S.C. § 1328. The only exceptions thereto would be child support and alimony [11 U.S.C. § 523(a)(5)] and those debts whose payment schedules extend beyond the date on which final payment through the plan is due [11 U.S.C. § 1322(b)(5)]. Thus, it would appear that the creditor has chosen the propitious time to raise its objection.

The parties in this case have agreed that there is no specific provision for objection to dischargeability in Chapter 13 and that the Code, specifically the language of 11 U.S.C. § 1325, must govern at the time of the confirmation hearing. The creditor, however, submits that § 1325(a)(3) and (4) gives the Court sufficient leeway to deny confirmation under circumstances when a nondischargeable judgment or claim is asserted by creditors.

*Good Faith Test—§ 1325(a)(3)*

One of the criteria that the Court must find that a debtor's plan in Chapter 13 has met prior to granting confirmation is that the Chapter 13 plan has been proposed in good faith and not by any means forbidden by law. [11 U.S.C. § 1325(a)(3)].

The Court concludes that this provision has much the same meaning under Chapter 13 as it did under the old Bankruptcy Act at sections 651, 656(a) and 146. No definition of good faith is set forth in the Code and the legislative history is bereft of discussion concerning this phrase. Under the Act the usage and interpretation of the good faith requirement is met by the debtor's not abusing the provisions, purpose or spirit of old Chapter XIII and by not using improper measures to procure acceptances. See *Collier on Bankruptcy*, 14th Ed., Vol. 10, Sec. 29.06, p. 339, and *In Re Terry*, 3 B.R. 63, 5 BCD 1397. The Court is unwilling to equate good faith with requiring the debtor to make a best effort toward payment of creditors though a number of recent decisions have done so. Prior to deletion by Congress from the technical amendments bill[1] before it at the writing of this opinion of a requirement of best effort, the Court would have been willing to so interpret the good faith provision; however, after deletion it can hardly be said that Congress in passage of the Code inadvertently left out such a requirement. It is this Court's opinion that Congress has effectively precluded a best effort test by considering and rejecting it and that it should not be back doored under the guise of good faith.

The present posture of Chapter 13 in many instances is that of an alternative to Chapter 7 wherein debtors have an added ability to pay secured creditors over the life of the plan in order to attempt to retain property necessary for their new start rather than to be required to redeem pursuant to 11 U.S.C. § 722 in cases where recalcitrant creditors refuse to enter into volun-

---

1. H.R.5447 A Bill to Correct Technical Errors in and Clarify Certain Provisions of Public Law 95–598 (The Bankruptcy Reform Act of 1978).

tary reaffirmation agreements allowed by 11 U.S.C. § 524(c) in Chapter 7 cases. For some debtors, this added advantage is warranted and necessary. For other debtors, who will take advantage of the system, this advantage is possibly not warranted. The Court, however, should not strike out from frustration to the detriment of all debtors for the possible abuse by some and should interpret and construe the statute so as to do justice within the framework provided. The Court concludes that the debtors' plan meets the good faith test.

*Indubitable Equivalence Test—§ 1325(a)(4)*

■ Section 1325(a)(4) of Title 11, United States Code reads as follows:

*(a) The Court shall confirm a plan if—*

. . .

*(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;*

. . .

The Bankruptcy code comment in regard to this subsection states . . . *the value (as of the effective date of the plan) of property distributed to unsecured creditors is not less than they would receive if the debtor were liquidated under chapter 7* . . . The legislative history says much the same thing. The Court, using the term from § 361 of Title 11, the adequate protection section, refers to its required finding as having to ascertain that what a creditor receives in a Chapter 13 must unquestionably be at least the value received in a Chapter 7, the indubitable equivalent. The question is thus framed, does this creditor receive at least the indubitable equivalent for its claim in a Chapter 13 as it would in a Chapter 7? The answer to this question the Court concludes to be *no.*

This creditor, who is to receive $440, 1% of a $44,000 judgment which would be nondischargeable in a Chapter 7, is not receiving the *quid pro quo* required by § 1325(a)(4). A creditor who receives a nondischargeable judgment in a Chapter 7

receives for its claim something of value. Though the theoretical value is $44,000, the actual value to be ascribed to such judgment is difficult to ascertain. Its actual value may range from full value to nominal value, dependent, among other possible considerations, on the persistence of the creditor, the resourcefulness and longevity of the debtor and the laws of the state pertaining to aid in execution and collection of judgments. It can be said, however, that $440 is not likely to be the indubitable equivalent of a $44,000 nondischargeable judgment against the debtor.

Realizing that this conclusion is opposed to the position by most, if not all, commentators, the Court has reviewed the Code and the legislative history to determine where support lies. Throughout the legislative history of the Code the thought that unsecured creditors are to fare well in Chapter 13 is expressed. Paraphrasing comments found at pages 118, 124 and 181 of House Report # 95–595, 95th Cong., 1st Session, 1977, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, it is stated that Chapter 13 will benefit creditors in that they will receive significantly more than if the debtor filed a Chapter 7 petition. Further, that the purpose of a Chapter 13 plan is to allow a debtor, free from harassment, an opportunity to pay creditors in full or a percentage of their claims. Creditors will not be disadvantaged in a Chapter 13. A Chapter 13 plan inures to the benefit of all creditors and should increase recovery by creditors. Upon full reading, the general gist and flavor of the comments to be found is that Chapter 13 creditors will fare better than those in Chapter 7 and that the debtor, allowed freedom, will perform well and to the benefit of his creditors in Chapter 13. These references are to unsecured creditors as secured creditors should get at least the value of their security under either chapter.

Though it is not the experience of this Court that a clear majority of Chapter 13 debtors are proposing full or substantial payment plans to unsecured creditors, nevertheless, it can be surmised from the legislative history that a majority of such

plans was what the legislators envisioned. It must be kept in mind that envisionment and not the ultimate reality is what one looks toward when attempting to divine legislative intent.

Turning to the Code itself, the Court in reviewing 11 U.S.C. § 1328 finds that should a debtor receive a hardship discharge under subsection (b) those obligations spoken of in 11 U.S.C. § 523(a) are not discharged and thus the debtor would still be obligated thereon though the debtor would receive a discharge from all other obligations. Reading § 1328 in conjunction with § 1325 and considering the possibilities of various plans, one can easily see substantial opportunity for abuse should Chapter 13 be interpreted to allow discharge without payment of debts of the nature described in 11 U.S.C. § 523(a)(2) or for that matter § 523(a)(4) and (6).

Assume the filing of separate Chapter 13 cases by two debtors. Debtor A files a plan calling for full or a percentage payment to all general unsecured creditors and full payment to secured creditors to the extent of collateral value. Some time after the plan is confirmed, debtor A is injured and for cause is given a hardship discharge [§ 1328(b)]. Debtor B files a plan calling for payment of secured creditors to the extent of collateral value and payment of a nominal amount or no payment to unsecured creditors. The plan is confirmed and the payments are made. Debtor A, who intended to pay all of his creditors, is granted a hardship discharge but, since he did not fully pay creditors as planned, the claims excepted from discharge by § 523(a) are not discharged. Debtor B's discharge is granted as a matter of right since he completed his plan and even though all of his unsecured creditors may have claims in the categories outlined in § 523(a)(2), (4) and (6), a discharge is granted from those debts [§ 1328(a)]. Thus, at the same time that debtor A, whose monetary performance may be substantially greater than debtor B's, is denied a discharge of § 523(a) debts, debtor B, who did not intend to pay creditors who were knowingly defrauded, is granted a discharge. That this can and will

occur is exemplified by the case of *In Re Susan M. Keckler*, 155 B.R. 3, 6 BCD 14. Taking the example given one step further, let us assume that debtor C files a plan under Chapter 13. Debtor C, in order to attend a § 341 meeting and confirmation hearing, must be writted out of jail pursuant to 28 U.S.C. § 2256 where he is languishing charged with a recent monetarily successful armed robbery. Debtor C's zero or nominal payment plan to unsecured creditors, including the recently robbed, is confirmed. Debtor C receives some form of federal benefit and even though he is now in jail he can successfully complete his plan. The confirmation and payment negates his debt to the victim and makes any subsequent order of restitution by the criminal trial judge questionable. He is thus entitled to discharge making a mockery and travesty of the system of justice.

■ Without intended reflection on the participants herein, as a general proposition the Court is of the opinion that the Bankruptcy Code ought not to be a haven for individuals seeking to absolve themselves from making whole persons whom they have defrauded, harmed, embezzled from, committed larceny against or against whom they have committed other acts covered by § 523(a)(2), (4) and (6). If, as the commentators indicate, it is the intent of Chapter 13 to absolve debtors of the liability for such acts, then that intent is ludicrous and the malaise apparently affecting our society is indeed understandable. This Court does not believe that Congress intended such a result and concludes that its decision is within the framework of Sections 523 and 1325(a)(4) and not contrary to legislative intent. The Court further concludes that to so apply the Code is to apply it so as to avoid an unjust or absurd conclusion and that the Court is empowered to so do. See *In Re Chapman*, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154 (1896); 2A *Sutherland's Statutory Construction*, 4th Ed., p. 65.

The Court concludes that the debtors' present plan may not be confirmed over the objection of this creditor holding a nondis-

chargeable judgment pursuant to § 523(a)(2)(B). The Court is of the opinion that such plans may not be confirmed over the objection of creditors contending non-dischargeability pursuant to § 523(a)(2), (4) and (6), the fraud subsections, until resolution of such contentions by judicial decision, reaffirmation or otherwise.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.