**In re Ricky Lee GARCIA, Lenita Kae Garcia, d/b/a R & L Trucking, Debtors.**

**Bankruptcy No. 80–40116.**

United States Bankruptcy Court, D. Kansas.

July 9, 1980.

Larry G. Karns, Topeka, Kan., for General Motors Acceptance Corp.

Jan M. Hamilton, Topeka, Kan., for debtors.

Lloyd C. Swartz, Topeka, Kan., for trustee.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

The debtors filed a Chapter 13 plan on February 19, 1980. A creditor, General Motors Acceptance Corporation, objected to confirmation of the debtors' plan on March 18, 1980. A hearing on confirmation and the objection thereto was held on April 4, 1980.

The creditor argued that the debtors' plan is violative of 11 U.S.C. § 1325(a)(3) and (4) in that it is not proposed in good faith as it fails to provide a fair distribution of assets to unsecured creditors and it fails to specify what percent of distribution unsecured creditors are to receive. When advised that certain unsecured creditors including GMAC would be paid nothing, the creditor objected on the basis that the payment of nothing to a creditor is violative of 11 U.S.C. § 1325(a)(3). Counsel, being aware of the Court's decision in classification cases, did not raise that issue herein.

The debtors contend that their plan complies with the applicable provisions of Title 11 U.S.C. and should be confirmed.

The parties were given the opportunity to argue and brief the issues involved and the case is now ready for decision.

## FINDINGS OF FACT

The debtors filed a Chapter 13 plan on February 19, 1980. The plan proposed to pay secured creditors the value of their security as long as the creditor's lien was valid. Unsecured creditors were divided into three classes. Cosigned unsecured debts were to be paid in full. An attorney representing the debtors in an ongoing lawsuit was to be paid in full. All other unsecured creditors were to receive what they would receive in a Chapter 7 liquidation. Unsecured creditors would receive nothing in a Chapter 7 liquidation.

General Motors Acceptance Corporation (GMAC) is a creditor with a claim in excess of $36,000 in this proceeding. GMAC's claim is partially secured, the collateral having been valued in the debtors' plan at $22,000. GMAC, on March 18, 1980, objected to the debtors' plan on the basis that the plan was not proposed in good faith [11 U.S.C. § 1325(a)(3)] and the value of property to be distributed under the plan is less than would be received in a Chapter 7 liquidation proceeding [11 U.S.C. § 1325(a)(4)].

The creditor presented no evidence on this latter point.

## CONCLUSIONS OF LAW

*§ 1325(a)(4) objection.*

 The creditor presented no evidence that the debtors' plan pays less than would be received by creditors in a Chapter 7 liquidation. The schedules which are a part of the debtors' plan reflect that general creditors would receive nothing in a Chapter 7 liquidation. The Court therefore concludes that the creditor has failed in this portion of its objection to confirmation.

 Initially, the creditor's objection on this point was that the debtors' plan called for no specific percentage payment to general creditors and was thus violative of § 1325(a)(4). The Court concludes that this contention is not meritorious. In fact, the Court believes that a preferred method of filing a plan would include a designation of that portion of income the debtor intends to pay into the plan as well as the period over which the plan is to extend, the classification of creditors to receive payment and the order in which payment is to be received. This method of planning allows unsecured creditors to see what resources are to be devoted to the plan, over what period of time the plan is to run and what creditors will precede them in payment. Unless full payment is intended, this method will tend to generate more funds to unsecured creditors than a flat percentage recitation or promise at the plan's inception. Since claims may be filed for six months after the § 341 meeting, creditors will not know the amount of the total unsecured claims against the money the debtor intends to pay into the plan; however, in the instance outlined by the Court the fewer general claims filed the larger the diligently filed general creditors' recovery. This is not so in the flat percentage plan. In fact, if the debtor truly intended to pay a flat percentage to all general creditors and all did not file claims, the debtor receives a windfall as he pays less totally into the plan than he expected and creditors will thus receive less than they could. Under this type of proposal, assuming some funds are to be allocated to unsecured creditors, it is conceivable that creditors filing claims could be paid 100%.

*§ 1325(a)(3) objection.*

The creditor cites several cases to the Court which stand for the proposition that some percentage of total unsecured debt must be paid to all creditors or confirmation is to be denied on the basis of lack of good faith pursuant to § 1325(a)(3).

The Court has reviewed those cases and others. *Matter of Marlow*, 3 B.R. 305, 1 C.B.C.2d 705 (Bkrtcy.) held that good faith is to be equated with the making of a "meaningful" payment. The word "meaningful" is not defined nor is it stated to whom or to what percent of to whom the payment must be meaningful. *In Re Beaver*, 2 B.R. 337, 1 C.B.C.2d 609 (Bkrtcy.) also equates good faith with meaningful payment. In *Beaver* the debtor was said to be paying all she could or possibly more than she should but she was denied confirmation because her plan lacked good faith. *In Re Iacavoni*, 2 B.R. 256, 1 C.B.C.2d 331 (Bkrtcy.) defines good faith as less than a debtor's best effort and to be equated with a meaningful payment. *Iacavoni* also suggests some criteria which may vary with each case. *In Re Campbell*, 3 B.R. 57, 1 C.B.C.2d 653 (Bkrtcy.) equates good faith with "substantial" payment rather than "meaningful" payment. "Substantial" is not defined other than to say that the facts of each case must be considered. *In Re Burrell*, 2 B.R. 650, 1 C.B.C.2d 474 (Bkrtcy.) imputes requirements of best effort and substantial payment into § 1325. In *Burrell* the debtor who was proposing a 15% plan was found to have passed the express requirements of § 1325 and an imputed requirement of making her best effort but to have failed the other imputed requirement of substantial payment. Substantial was defined as at least 70%. The case of *In Re Seman*, 4 B.R. 568, CCH Bankruptcy Law Reports, ¶ 67,455 (Bkrtcy.) though finding compliance with the literal reading of § 1325 denies confirmation on the basis that Congress did not intend zero plans should be confirmed.

38 The Court gathers from the above cases and others of similar reasoning that in order to be safe a debtor must propose a plan which pays creditors at least 70%, is the debtor's best effort and is thought to be such as well as meaningful by all interested parties as well as the judge. The Court, however, finds no support for requiring a 70% payment or any other specific percent payment from a debtor in a composition plan either in the Code or its predecessor. Furthermore, the terms "substantial" and "meaningful" are not definitive terms, have resulted in diverse judgments and are nowhere to be found in the Code as requirements for confirmation. Certainly good faith was not so defined by Congress. It did not supply any definition for that term either in the Code or the Legislative History.

The Court can think of nothing more disheartening and frustrating to a debtor in this type of proceeding than to be told that he or she has met the standards expressly set forth in § 1325, has met an imputed requirement of best effort but has failed an imputed and engrafted substantial or meaningful payment requirement. That person is then told to file a Chapter 7 proceeding or in some instances has had a plan converted to a Chapter 7 proceeding where nothing is paid to creditors. All the debtor wished to do was his or her best. Would that all debtors appearing before this Court did.

It is the conclusion of this Court that confirmation of a debtor's plan must be governed by § 1325, § 1322 and other applicable sections of Title 11 of the United States Code. Through interpretation and construction of these statutes judges may arrive at differing opinions as to what constitutes an acceptable plan; however, it is this Court's opinion that § 1325(a)(4) precludes the Court from fixing in this or similar cases just any percentage or amount of money which must be paid to unsecured creditors. That minimum requirement is determined and established by § 1325(a)(4) and either the state or federal law pertaining to exemptions. See *In Re Webb*, 3 B.R. 61, 1 C.B.C.2d 465 (Bkrtcy.); *In Re Suther-*

*land*, 3 B.R. 420; 6 B.C.D. 13 (Bkrtcy.). Though the figure determined thereby from case to case may vary, the formula for its determination remains the same for all cases, i. e. what are the debtors' entitled exemptions and what is the value of any property or right beneficial to creditors which remains after deducting exempt and secured property. Using that formula, it is concluded that this debtors' plan, which calls for payment to secured creditors and certain identified classes of unsecured creditors and no payment to the remaining general class of unsecured creditors, complies with all applicable sections of Title 11 U.S.C. and is to be confirmed.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.