In re Michael D. **FITAK** and Madge R. Fitak fdba The Public Phone Store.

No. C2–88–905.
Bankruptcy No. 2–85–00376.

United States District Court,
S.D. Ohio, E.D.

Oct. 31, 1990.

Robert Hull Farber, Jr., Columbus, Ohio, for plaintiffs.

William Boyd Logan, Jr., Columbus, Ohio, for Old Stone Credit Corp.

Stephen Albert Santangelo, Columbus, Ohio, for Cheers Communications Corp.

James Cyrus Lewis, III, Columbus, Ohio, for Bank One Columbus N.A.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court upon Notices of Appeal and Cross Appeal pursuant to 28 U.S.C. § 158(a).

Upon careful consideration and being duly advised, this Court finds these appeals not well taken and are DENIED.

### FACTS

The pertinent facts are as follows:

Debtors filed their petition under Chapter 13 of the Bankruptcy Code on February 8, 1985. Concurrently with the filing of the petition, Debtors filed their Chapter 13 Plan. At the time of the filing of the petition, Mrs. Fitak was employed by the State of Ohio Auditor's Office, Department of Natural Resources ("ODNR"). As a result of such employment, contributions were made on Mrs. Fitak's behalf into the Public Employees Retirement System Fund ("PERS").

On April 9, 1985, Debtors filed an amendment to their schedules which disclosed the PERS interest held by Mrs. Fitak. The value of such interest was listed in the approximate amount of $13,200.00. The amendment claimed an exemption in such interest under Ohio Revised Code § 2329.66(A)(10).

Thereafter, the Bankruptcy Court entered its order denying confirmation of the Plan on the basis that the dividend offered under the Plan did not satisfy the best interest of creditors' test. 11 U.S.C. § 1325(a)(4). The Chapter 13 Plan was amended to increase the dividend to holders of unsecured claims to twenty percent (20%). On December 13, 1985, the Court entered an order confirming Debtors' Second Amended Chapter 13 Plan (the "Plan"). The Plan provided for monthly payments to the Trustee of $1,100.00, payment in full of secured and priority unsecured claims, and a twenty percent (20%) dividend to holders of allowed non-priority unsecured claims. The Plan also provided for the sale of certain real estate by Debtors with the proceeds of such sale to be used to fund the Plan in part.

In March, 1986, Mrs. Fitak terminated her employment with ODNR. In June, 1986, Mrs. Fitak withdrew the sum of $16,000.00 from her PERS account. Debtors did not advise the Trustee of Mrs. Fitak's withdrawal of these monies. Between June and September, 1987, Debtors sold their interest in all real estate owned by them at private sale in accordance with the provisions of the Plan.

The Trustee filed a motion for modification of Debtors' Chapter 13 Plan on October 14, 1987, seeking an order requiring Debtors to increase the dividend to unsecured creditors. The basis for such motion was Mrs. Fitak's unanticipated receipt of the PERS monies and the receipt of the proceeds of the sale of the real estate. Subsequently, Cheers and Bank One, Columbus, N.A. filed separate motions for modification of the Plan.

On June 29, 1988, the Bankruptcy Court issued its Opinion and Order in which it ruled that the sum withdrawn from the PERS account by Mrs. Fitak was an event which could not have been reasonably anticipated by the Trustee at the time of the confirmation of the Plan and subsequently ordered the receipt of said funds to be distributed to the creditors as an additional dividend. The Bankruptcy Court further found that the funds derived from the sale of Appellants' real estate in an amount greater than the earlier appraised value was foreseeable and denied the creditor's motion for modification. 92 B.R. 243.

It is from this Opinion and Order of the Bankruptcy Court that Debtors and Creditors appeal.

## LAW AND ANALYSIS

28 U.S.C. § 158(a) provides in pertinent part:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgment, orders, and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under § 157 of this title.

The June 29, 1988, Opinion and Order issued by Judge Cole is a final order for the purposes of this appeal and complies with § 158(a) above. A complete review of the Record on Appeal has been made.

### I.

#### A.

Appellants contend that the Bankruptcy Court erred in sustaining certain motions filed by the Trustee, Bank One of Columbus, N.A., and Cheers Communication Corporation to modify the Chapter 13 Plan filed by the Debtors requiring all PERS funds withdrawn by Mrs. Fitak to be distributed to unsecured creditors. Debtors argue that the Bankruptcy Code does not provide for modification of the Plan in the instant matter.

While the doctrine of *res judicata* may indeed bar an increase in payments it does so only in the absence of unanticipated, substantial changes in the debtor's financial situation. *In re Arnold*, 869 F.2d

240 (4th Cir.1989). This Court concurs with the ruling of the Fourth Circuit which adopted the objective test applied by the Bankruptcy Court in *Fitak* to determine whether a change was unanticipated as being, "whether a debtor's altered financial circumstances could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification." (emphasis in original). *Id.* at 242. A review of the Record on Appeal reveals that the Bankruptcy Court found Mrs. Fitak's withdrawal of the PERS funds to be a change in financial circumstances which the Trustee could not have reasonably foreseen. The PERS funds are not available to an employee until after termination of employment or retirement. The Record on Appeal provides no indication that the Trustee knew of Mrs. Fitak's intention to leave her position with the State of Ohio following the birth of her child. Indeed, the Trustee's Plan included the revenue from her continued employment as necessary to fund the Plan. To find in favor of Debtors would have the likely effect of encouraging future Debtors to withdraw PERS funds after the confirmation and during the term of the Plan allowing an undesirable windfall at the same time Creditors are seeking relief. This Court finds that this standard was correctly applied by the Bankruptcy Court in the instant matter.

### B.

Debtors further argue that the Bankruptcy Code does not provide for modification of the Plan in the instant matter. The Court does not find Debtor's position compelling. Indeed, this Court concurs with Judge Lundin in his ruling that provides in pertinent part:

> 11 U.S.C.S. §§ 1329(b) and (c) fix the statutory limits on modifications of Chapter 13 plans after confirmation. The mandatory and permissive provisions of a Chapter 13 plan found in 11 U.S.C.S. §§ 1322(a) and (b) (1987) and the confirmation requirements of 11 U.S.C.S. § 1325(a) (1987) "apply to any modification under subsection (a) of this section." 11 U.S.C.S. § 1329(b)(1). A Chapter 13 debtor can use the permitted plan provisions described in § 1322(b), subject to the confirmation requirements of § 1325(a), to modify a confirmed Chapter 13 plan under § 1329(a)....
>
> Section 1327(a) is not a limit on permitted modification of a confirmed Chapter 13 plan; rather, it is a statutory description of the effect of a confirmed plan or of a confirmed modified plan. A confirmed Chapter 13 plan binds the debtor (and all creditors), 11 U.S.C.S. § 1327(a), but a confirmed plan "may be modified ... at any time after confirmation of the plan but before completion of payments under the plan ..." 11 U.S.C.S. § 1329(a). The confirmed plan binds the debtor unless and until it is modified, and then the modified plan "becomes the plan," 11 U.S.C.S. § 1329(b)(2), and the modified plan has the effects described in § 1327. Sections 1322(a), (b), 1323(c) and 1325(a) are the appropriate sources of the limits on modification under § 1329. *See* 11 U.S.C.S. § 1329(b).

*In re Perkins*, 111 B.R. 671 (Bkrtcy.M.D. Tenn.1990).

In similar cases, the courts have found an unanticipated change of circumstances warrants a modification of the Plan. *See In re Euerle*, 70 B.R. 72 (Bkrtcy.D.N.H. 1987), *In re Koonce*, 54 B.R. 643 (Bkrtcy.D.S.C.1985), *In re Arnold, supra.* Accordingly, the Court finds itself in agreement with the application of these statutory provisions by the Bankruptcy Court.

### C.

Debtors further argue that the Debtor is permitted to claim PERS funds as exempt from the estate. This Court will not address the qualification for exemption of PERS funds prior to withdrawal by the employee. The sole concern here shall be the status of said funds upon withdrawal by the debtor.

Property of the estate is defined in 11 U.S.C. § 541(a)(1) to include all interest, legal or equitable, of the debtor in property. Upon the establishment of the estate, claims of exemption may be submitted. *In the Matter of Kelley*, 31 B.R.

786 (Bkrtcy.N.D.Ohio 1983). 11 U.S.C. § 1306(a) defines property of the estate to include that specified in section 541 *and* "all property of the kind specified in (§ 541) that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted ..." Hence, the PERS funds were property of the estate upon the filing of the petition as was Mrs. Fitak's right to receive those funds upon termination of employment. This principle was well articulated by the Bankruptcy Court in *In re Wiggins* stating:

> [B]ecause the right to receive a payment for employment termination existed at the time the Debtor's Petition was filed, that right became property of the estate pursuant to Section 541(a). Should the Debtor's employment be terminated during the pendency of this case, any monies to which the Debtor would be entitled would be property of the estate.

60 B.R. 89 (Bkrtcy.N.D.Ohio 1986) at 95.

Mrs. Fitak's voluntary termination of her employment with the State of Ohio and subsequent withdrawal of PERS funds has the result of permitting the Trustee to distribute those funds to creditors.

### D.

■ Debtors also claim exemption under the Ohio Revised Code § 2329.66 which states in pertinent part:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows ...
>
> (10)(b) The person's right to receive a payment under any pension, annuity, or similar plan or contract ... on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the person and any of his dependents ..."

This section clearly was not intended to apply to circumstances as have occurred in the instant matter. A *voluntary termination* of employment followed by a *voluntary withdrawal* do not meet the provisions necessary for an exemption under this statute. *Wiggins* at 96. Debtors may not claim this exemption.

This Court finds itself in agreement with the ruling of the Bankruptcy Court and finds no error in its holding that the Debtors voluntary withdrawal of PERS funds during the course of the plan constituted an unanticipated windfall and that these funds may be distributed to creditors.

### II.

■ Appellees' subsequent cross appeal petitions this Court to overrule that portion of the Bankruptcy Court's June 29, 1988, Opinion and Order which declined to modify the Plan to include funds derived from the sale of real property over the appraised value as listed in the Plan. Cross appellants claim that to allow the Debtors to retain these funds would be unpalatable and a potential hardship to creditors receiving only 20% under the Plan and this Court must agree.

However, the Bankruptcy Court is correct in its application of 11 U.S.C. § 1329(a) which, as indicated above, allows a modification of the Plan only if the debtor's altered financial circumstances could not have been reasonably anticipated at the time of the confirmation of the Plan.

In the instant matter, the Record on Appeal indicates that the sales of the real property was provided for by the Plan. It is clear that the appraisal estimated the fair market value of the real property to be $130,000–$132,000 in March of 1985. It is also clear that the Plan contemplated the sale of the real property a full fifty-seven (57) months from the date of confirmation. The total amount generated from the sale was $152,346.50 providing a $20,346.50 surplus. In a market economy, real estate values do indeed fluctuate and may well increase. Cross appellants' suggestion that an increase in real estate values over a fifty-seven month period could not be reasonably anticipated lacks credulity and merit.

This Court takes note that had Creditors filed an objection to the Second Amended Plan as confirmed, the Debtors would have been required under 11 U.S.C. § 1325(b) to

automatically submit all disposable income to the Trustee over the course of the next three years.

Accordingly, the Bankruptcy Court did not err in determining "that the sale by Debtors of the Residential Property and the Adjoining Tract, for an amount approximately 20% greater than the properties' combined appraised value at the time this case was filed, is not ... an *unanticipated* change in Debtors' circumstances as would support modification of the Plan under 11 U.S.C. § 1329(a). (emphasis in original).

The positions of the Appellant and Cross–Appellants are not well taken and hereby DENIED. The Opinion and Order of the Bankruptcy Court is SUSTAINED.

IT IS SO ORDERED.