In the Matter of Ronald J. WITKOWSKI, Debtor–Appellant.

No. 93–1462.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1993.

Decided Feb. 14, 1994.

Sheryl A. Fyock, Office of Trustee, Elaine C. Jensen (argued), Chicago, IL, for Jack McCullough.

J. Reed Millsaps, Michael L. Maduff, Frank J. Kokoszka, Paul Eberhardt (argued), Leslie A. Blau, Blau, Eberhardt & Kokoszka, Chicago, IL, for Ronald J. Witkowski.

Before POSNER, Chief Judge, WOOD, Jr. and MANION, Circuit Judges.

MANION, Circuit Judge.

Ronald Witkowski filed a Chapter 13 petition for bankruptcy. The bankruptcy court approved Witkowski's proposed bankruptcy plan which provided that unsecured creditors receive 10% of their claims. After some creditors failed to file claims, the trustee moved to modify the plan seeking to increase the percentage for those creditors who did file claims. The bankruptcy court granted the motion, and the district court affirmed. Witkowski appeals to this court and we affirm.

## I. Background

Chapter 13 bankruptcy "adjusts debts of 'an individual with regular income.'" *Matter of Smith,* 848 F.2d 813, 814 (7th Cir.1988) (quoting 11 U.S.C. § 109(e)). In contrast to a Chapter 7 bankruptcy, which requires liquidation, Chapter 13 "allows a debtor to keep his assets, but he must use his future income to pay his creditors." *Id. See also Matter of Aberegg,* 961 F.2d 1307, 1308 (7th Cir.1992); *In re Schaitz,* 913 F.2d 452, 453 (7th Cir. 1990). To begin a Chapter 13 bankruptcy, the debtor must file a petition for bankruptcy with the clerk of the bankruptcy court. 11 U.S.C. § 301; *Smith,* 848 F.2d at 814. Within 15 days of the filing of the Chapter 13 petition, the debtor must file a bankruptcy plan. Bankruptcy Rule 3015; *id.* After the debtor files for bankruptcy and formulates a bankruptcy plan, the bankruptcy court holds a hearing to determine whether the plan satisfies all of the requirements of the bankruptcy code. § 1324. *See e.g., Smith,* 848 F.2d at 815. "The bankruptcy court must confirm the Chapter 13 plan if it meets the six requirements of § 1325(a)...." *Aberegg,* 961 F.2d at 1308.

A bankruptcy plan basically sets forth an estimate of the total amount of money that the debtor owes creditors and the amount he can afford to pay them. *See e.g., Smith,* 848 F.2d at 814–15; *In re Moseley,* 74 B.R. 791, 796–97 (Bankr.C.D.Cal.1987), *appeal dismissed as moot and order vacated,* 101 B.R. 608 (9th Cir.1989). The plan then establishes an estimated payment schedule which includes the monthly payments the debtor will make, the time period in which these payments will be paid, and the total percentage each creditor will receive on his claim. *Id.* The payment schedule, however, is only an estimate. For various reasons, at the time that the bankruptcy plan is submitted the exact amount of allowable claims is unknown. For example, the amount of the claim may be in dispute; or a creditor may fail to file a timely proof of claim, as required by Rule 3002(a) to participate in a distribution under the bankruptcy plan. Rule 3002(a). 8 *Collier on Bankruptcy* ¶ 3002.03 at 3002–9 (15th ed. 1993).

Once the allowable claims are established, the actual amount the debtor must pay may differ from the amount of estimated claims. *See e.g., In re Casper,* 153 B.R. 544, 545 (Bankr.N.D.Ill.1993), *rev'd on other grounds sub nom.,* 154 B.R. 243 (N.D.Ill.1993); *In re Garcia,* 6 B.R. 35, 37 (Bankr.D.Kan.1980). This may require an adjustment in the pay-

ment schedule, depending on the type of plan. *Garcia,* 6 B.R. at 37. Two models of bankruptcy plans have evolved which automatically adjust the payment schedule by including a variable which fluctuates depending on the amount of claims actually filed. Various courts call these two models "pot plans" and "percentage plans." *See e.g., In re Phelps,* 149 B.R. 534, 537 n. 3 (Bankr. N.D.Ill.1993); *Moseley,* 74 B.R. at 797 n. 9; *In re Jordan,* 161 B.R. 670, 671–72 (Bankr. D.Minn.1993); *In re Casper,* 153 B.R. at 547; *Garcia,* 6 B.R. at 37. Accordingly, for purposes of discussion, a "percentage plan" is a plan which provides a set percentage of his claim each creditor will receive but leaves the exact amount the debtor will pay in flux until all claims are approved. A "pot plan" refers to a plan which provides that the debtor will pay a fixed amount or "pot" of money into the bankruptcy estate but the percentage creditors will receive ultimately depends on the total amount of claims that are approved.

Against this backdrop, we now consider Witkowski's plan, which provided:

> The debtor, the debtor's employer, or other entity shall remit the sum of [$600][1] each month payable at the rate of [$600] per month to the Trustee for the benefit of creditors. From the payments specified above secured creditors shall be paid 100% of allowed claims and unsecured creditors shall be paid 10% of allowed claims. The term of the Plan shall be [47][2] months or such lesser time as may be required to pay all claims as provided above."

Witkowski asserts that this is a "percentage plan" because it provides a set percentage which creditors will receive under the plan and leaves in flux the total number of payments that he will have to make, depending on how many claims are filed and approved.

In confirming the plan, however, the bankruptcy court entered a simple order which provided that the debtor's plan is as follows:

| Secured | Unsecured | No. of Months | Mo. Payments |
| --- | --- | --- | --- |
| 100% | 10% | 47 | $600 |

The order did not include the language "or such lesser time as may be required to pay all claims as provided above." Nonetheless, for purposes of this opinion, we will assume that the confirmation order incorporated the unamended language[3] of the proposed plan because the bankruptcy code provides that the "provisions of the confirmed *plan* bind the debtor and each creditor." § 1327(a) (emphasis added). Accordingly, we will assume, as Witkowski argues, that the language "or such lesser time as may be required to pay all claims as provided above" created a "percentage plan."

Witkowski's bankruptcy plan was confirmed on March 29, 1990. The deadline for creditors to file proof of claims was June 11, 1990. Many of Witkowski's creditors failed to file claims by this deadline. Because fewer claims were filed than anticipated, Witkowski's payments of $600 for 47 months exceeded the amount necessary to provide a 10% return to unsecured creditors. The trustee moved to modify the bankruptcy plan to increase to 19% the percentage unsecured creditors who had filed claims would receive. Witkowski objected to the modification, claiming that his plan was a "percentage plan" which automatically accounted for the surplus in its term length of "47 months or such lesser time as required." Witkowski claimed that the lesser time required was approximately 43 months. Notwithstanding Witkowski's objections, the bankruptcy court granted the trustee's motion to modify. Witkowski appealed and the district court affirmed.

## II. Discussion

Witkowski asserts three arguments in support of his position that the bankruptcy court erred in modifying his confirmed bankruptcy

1. The original proposed plan provided for payments of $225. Witkowski amended the proposed plan to provide for payments of $600 prior to its confirmation, pursuant to 11 U.S.C. § 1323.

2. The original proposed plan provide for 36 monthly payments. Witkowski amended the pro-

posed plan to provide for 47 monthly payments prior to confirmation, pursuant to 11 U.S.C. § 1323.

3. The payment amount and term length of the original plan was amended. *See supra* notes 1–2, at 741.

plan. First, he claims that a bankruptcy court cannot modify an approved bankruptcy plan unless the trustee demonstrated an unanticipated substantial change in financial circumstances. Witkowski claims that the trustee did not meet this threshold test because in a bankruptcy some creditors routinely fail to file claims. Therefore, Witkowski claims the bankruptcy court could not modify the plan. Witkowski next argues that the court's modification changed the approved "percentage plan" to a "pot plan" and that such a modification was inappropriate. Finally, Witkowski claims that the bankruptcy court erred by failing to conduct an independent inquiry as to whether cause exists for the modified plan to exceed three years. We discuss each of these issues in turn.

## A. Section 1329

Witkowski first argues that the bankruptcy court could not modify his confirmed bankruptcy plan because no unanticipated "substantial change" in financial circumstances occurred. Thus the preliminary question is why the court needs to find a substantial change in circumstance before modifying the plan. Section 1329 of the bankruptcy code controls modifications of confirmed bankruptcy plans and provides that:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to

(1) increase or reduce the amount of the payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

By its terms, § 1329 does not provide for any threshold requirement to modify a bankruptcy plan. *In re Powers*, 140 B.R. 476, 478 (Bankr.N.D.Ill.1992); *In re Perkins*, 111 B.R. 671, 673 (Bankr.M.D.Tenn.1990) ("changed circumstances, unanticipated or otherwise, is not imposed by the code as a threshold barrier to access to modification under § 1329"). *See also In re Larson*, 122 B.R. 417, 420 (Bankr.D.Idaho 1991) (refusing to impose a threshold requirement on the similarly worded modification statute which applies to Chapter 12 bankruptcies). Rather, according to the terms of § 1329, the debtor, the trustee or an unsecured claimholder has an absolute right to request modification of the plan between confirmation of the plan and completion of the plan payments. § 1329(a)(2). *Powers*, 140 B.R. at 478; *Perkins*, 111 B.R. at 673. Further, § 1329 allows the trustee to do exactly what he did in this situation—increase the amount of payments on claims of a particular class. § 1329(a)(1); *Powers*, 140 B.R. at 478. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Matter of Sinclair*, 870 F.2d 1340, 1341 (7th Cir. 1989) (quoting *Burlington North. R.R. v. Oklahoma Tax Comm.*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987)).

Notwithstanding the plain, unambiguous language of § 1329, Witkowski argues that a § 1329 modification is only available if the trustee demonstrates an "unanticipated substantial change" in the debtor's financial circumstances. Witkowski relies on the Fourth Circuit opinion of *In re Arnold*, 869 F.2d 240 (4th Cir.1989). The Fourth Circuit is the only circuit to have specifically considered the propriety of § 1329 modifications. Other circuits have tangentially commented on § 1329 modifications, but these cases do not analyze much less discuss the issue and are thus not instructive.[4] Witkowski also cites

---

**4.** *See, e.g., Laughlin v. United States I.R.S.*, 912 F.2d 197, 203 (8th Cir.1990) (dissenting, J. Magill) (noting that a "debtor has an absolute right to have the case dismissed, to convert the case to Chapter 7, or to request modification of the plan"); *In re LeMaire*, 898 F.2d 1346, 1355 (8th

numerous bankruptcy decisions for the proposition that a modification under § 1329 is appropriate only upon proof of a "change in circumstance." [5]

In relying on these cases, Witkowski presents two issues: (1) whether § 1329 *itself* requires a threshold "change in circumstance;" (2) whether the common law doctrine of res judicata imposes a "change in circumstance" requirement. Before discussing these two issues, however, we need to take a moment to address a third issue which Witkowski indirectly presents.

In arguing that § 1329 and the common law doctrine of res judicata impose a "change in circumstance" requirement, Witkowski asserts that such a "change in circumstance" must be "unanticipated" and "substantial." Witkowski emphasizes "unanticipated" and "substantial" because he recognizes that the trustee would be able to meet a less restrictive "change in circumstance" test. "No particularly burdensome proof is required for a debtor to show 'changed circumstances.'" *In re Moseley,* 74 B.R. 791, 799 n. 13 (Bankr. C.D.Cal.1987). Failure of a significant number of unsecured creditors to file claims would seemingly satisfy this lenient requirement. But according to Witkowski, it would not meet an "unanticipated substantial change in circumstance" standard because the failure of creditors to file claims is something that is anticipated in most bankruptcies. In any event, he insists the change is not substantial. Accordingly, to demonstrate that the court erred in modifying the plan,

Witkowski declares "unanticipated substantial change in financial circumstances" to be the appropriate standard.

Witkowski cites *Arnold,* 869 F.2d 240, 243 (4th Cir.1989), and numerous bankruptcy court opinions which have required an "unanticipated substantial change in financial circumstance." [6] Other bankruptcy courts, however, have not included "unanticipated" or "substantial" in the threshold standard. *See In re Perkins,* 111 B.R. 671, 673 (Bankr. M.D.Tenn.1990), and Harry L. Deffebach, *Post-confirmation Modification of Chapter 13 Plans: A Sheep in Wolf's Clothing,* 9 Bank.Dev.J. 153 (1992), for a thorough discussion of the various threshold standards adopted by bankruptcy courts. We need not choose between the standards, however, because neither § 1329 nor the doctrine of res judicata impose any threshold change in circumstance standard.

*1. Whether § 1329 itself requires a "change in circumstances."*

■ To support his position that § 1329 contains a threshold change in circumstance requirement, Witkowski points to *In re Arnold,* 869 F.2d 240 (4th Cir.1989). In *Arnold,* a debtor challenged a modification of a bankruptcy plan which increased the amount of the monthly payments and extended the length of the plan. The court noted that "[a]lthough § 1329(a) does not explicitly state what justifies such a modification, it is well-settled that a substantial change in the debtor's financial condition after confirmation

**5.** *In re Cook,* 148 B.R. 273, 279–280 (Bankr. W.D.Mich.1992) (chapter 12); *In re Algee,* 142 B.R. 576, 580 (Bankr.D.D.C.1992); *In re McNulty,* 142 B.R. 106, 109 (Bankr.D.N.J.1992); *In re Bostwick,* 127 B.R. 419, 420 (Bankr.N.D.Ill. 1991); *In re Weissman,* 126 B.R. 889, 893 (Bankr.N.D.Ill.1991); *In re Bereolos,* 126 B.R. 313, 326 (Bankr.N.D.Ind.1990); *In re Fitak,* 121 B.R. 224, 228–29 (S.D.Ohio 1990); *In re Woodhouse,* 119 B.R. 819, 820 (Bankr.M.D.Ala.1990); *In re Lynch,* 109 B.R. 792, 796 (Bankr.W.D.Tenn. 1989); and *Matter of Grogg Farms, Inc.,* 91 B.R. 482, 485 (Bankr.N.D.Ind.1988) (chapter 12).

**6.** *See, e.g., In re Weissman,* 126 B.R. 889, 893 (Bankr.N.D.Ill.1991); *In re Bereolos,* 126 B.R. 313, 326 (Bankr.N.D.Ind.1990); *In re Fitak,* 121 B.R. 224, 226 (S.D.Ohio 1990).

Cir.1990) (dissenting, J. Magill) (noting that the plan would be subject to modification under 11 U.S.C. § 1329(a) if the debtor's income increased significantly); *In re Fietz,* 852 F.2d 455, 458 (9th Cir.1988) (noting that only debtors could seek modification under § 1329 for petitions filed before October 8, 1984); *Education Assist. Corp. v. Zellner,* 827 F.2d 1222, 1226 (8th Cir.1987) (noting that "[i]f, in the future, [the creditor] can show a substantial change in [debtor's] ability to pay, it may request modification of the plan"); *West v. Costen,* 826 F.2d 1376, 1379 (4th Cir. 1987) (noting that the creditor did not appeal the denial of a § 1329 modification); *In re Johnson,* 708 F.2d 865, 868 (2d Cir.1983) (noting that Congress provided a statutory mechanism for modifying a confirmed Chapter 13 bankruptcy plan when circumstances such as those affecting the debtor occurred, namely, losing a job and caring for an ill mother).

may warrant a change in the level of payments." *Id.* at 241. Witkowski also relies on the previously cited bankruptcy court decisions in which the court imposed a threshold "change in circumstance" requirement. *See supra* note 5, at 743.

Contrary to Witkowski's portrayal, *Arnold* does not hold that § 1329 *itself* required any "change in circumstance." [7] Rather the court merely stated that such a showing justified modification.[8] Moreover, even if *Arnold* is read to require a change in circumstances, we disagree that § 1329 requires such a showing. As discussed above, § 1329 is clear and unambiguous and gives the debtor, creditor, or trustee the absolute right to seek a modification.

The same analysis negates the bankruptcy court decisions cited by Witkowski. To find some rationale for requiring a change in circumstance, some of the bankruptcy courts relied on the legislative history of § 1329. *In re Perkins*, 111 B.R. 671, 673 (Bankr. M.D.Tenn.1990). *See, e.g., In re Moseley*, 74 B.R. 791 (Bankr.C.D.Cal.1987). Such reliance goes beyond the plain meaning of the statute. "Legislative history helps us learn what Congress meant by what it said, but it is not a source of legal rules competing with those found in the U.S. Code." *Matter of Sinclair*, 870 F.2d 1340, 1344 (7th Cir.1989). The Code, in this instance § 1329, does not require any threshold requirement for a modification and we will not use the legislative history to create a rule where none exists. *See id.*

The varying threshold standards adopted in the bankruptcy court decisions further underscore the need to apply the statutory language when it is clear and unambiguous. "[T]he various approaches to postconfirmation modification of chapter 13 bankruptcy plans are obscured in rhetoric, resulting in contradictory judicial approaches to postconfirmation modification of chapter 13 plans." Harry L. Deffebach, *Postconfirmation Modification of Chapter 13 Plans: A Sheep in Wolf's Clothing*, 9 Bank.Dev.J. 153 (1992).[9] Such confusion illustrates the need to use the plain language of the statute, rather than a judicially created standard derived from legislative history.

### 2. Res Judicata.

Witkowski also asserts that the common law doctrine of res judicata prevents modification of an approved bankruptcy plan unless the movant demonstrates a change in circumstances. *In re Arnold*, 869 F.2d 240, supports this proposition. In *Arnold*, the Fourth Circuit concluded that "the doctrine of res judicata bars an increase in the amount of monthly payments only where there have been no unanticipated, substantial changes in the debtor's financial situation." *Id.* at 243. Other bankruptcy courts have also found that the doctrine of res judicata applies to § 1329 and thus bars modifications without a showing of a change in circumstance. *See In re Bereolos*, 126 B.R. 313, 325 (Bankr.N.D.Ind.1990), for a listing of cases applying res judicata to § 1329 modifications.

"Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 152, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1978). The common-law principle of res judicata, however, does not apply " 'when a statutory purpose to the contrary is evident.' " *Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, ——, 111 S.Ct. 2166, 2170, 115 L.Ed.2d 96 (1991), quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779,

---

**7.** *Arnold* does, however, hold that the doctrine of res judicata requires a showing of an unanticipated substantial change in circumstances for a § 1329 modification. This is a separate question which is discussed *infra* at 744–45.

**8.** *Arnold* is also distinguished in that the court considered a substantial change in circumstances appropriate when the debtor's payments were increased. In this case, Witkowski's payments are not being increased. We do not pause on this difference, however, because if § 1329 were to require a change in circumstances, it would be required for all modifications, not just increases in the monthly payments.

**9.** The same confusion revolves around § 1229 which allows modifications of chapter 12 bankruptcy plans. (Chapter 12 applies to family farm businesses.) *See, e.g., In re Larson*, 122 B.R. 417 (Bankr.D.Idaho 1991); *In re Martin*, 130 B.R. 951 (Bankr.N.D.Iowa 1991); *Matter of Grogg Farms, Inc.*, 91 B.R. 482 (Bankr.N.D.Ind.1988).

783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952). Congress need not state precisely any intention to overcome the application of res judicata. *Id.* Rather, if the plain language of the statute makes it clear that res judicata does not apply, it is sufficient. For example, in *Astoria* the Supreme Court held that the statutory scheme of the Age Discrimination in Employment Act of 1967 implies that federal courts should not apply doctrines of preclusion to state administrative findings. The Court reasoned that while the statute did not expressly state that state administrative findings are not preclusive, Sections 14(b) and 7(d)(2) of the Act make it clear that principles of preclusion do not apply. Section 14(b) provides that if a State has its own age-discrimination law, a federal Age Act plaintiff must pursue his claim with the responsible state authorities before filing in federal court. Section 7(d)(2) provides the deadline for filing Age Act claims after the termination of state proceedings. The court held that "[b]oth provisions plainly assume the possibility of federal consideration after state agencies have finished theirs." *Id.*, 501 at ——, 111 S.Ct. at 2171. Accordingly, the Supreme Court concluded that state administrative findings are not preclusive.

Similarly, the statutory framework of the Bankruptcy Code plainly assumes the possibility of modifications of bankruptcy plans after they are confirmed. Section 1327 of the bankruptcy code provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." § 1327. Congress, however, also provided a mechanism to change the binding effect of § 1327 when it passed § 1329 to allow for modifications. "If the drafters of the Bankruptcy Code intended for a confirmation hearing to have res judicata effect, there would be little or no reason for Section 1329." *In re Williams*, 108 B.R. 119, 123 (Bankr. N.D.Miss.1989). Moreover, Congress could have specifically imposed a precondition to a § 1329 modification, but it did not do so. In

fact, where it deemed appropriate, Congress has specifically provided a "change in circumstance" prerequisite under another provision of the Bankruptcy Code. § 1328(b). *See In re Phelps*, 149 B.R. 534, 538 (Bankr.N.D.Ill. 1993); *In re Powers*, 140 B.R. 476, 479 n. 3 (Bankr.N.D.Ill.1992). This provision makes it clear that Congress did not intend the common law doctrine of res judicata to apply to § 1329 modifications. Accordingly, we disagree with *Arnold*.[10]

Witkowski argues that without application of res judicata bankruptcy courts will be inundated with motions to modify resulting in a great instability of both the plan and the creditor's position. Some courts may have reacted to this concern to justify imposing a restriction on § 1329 motions. *In re Algee*, 142 B.R. 576, 580 (Bankr.D.C.1992); *In re Stage*, 79 B.R. 487, 488 (Bankr.S.D.Cal.1987). Even if there were some justification for concern, courts cannot re-write statutes. Judges do not "have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand." *Astoria*, 501 U.S. at ——, 111 S.Ct. at 2169. Nevertheless, the concern for "inundation" and "instability" is unfounded.

First, modifications under § 1329 are not limitless as implied by Witkowski and the cases he cites. Rather, by the express terms of the statute, modifications are only allowed in three limited circumstances to: "(1) increase or reduce the amount of the payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." § 1329(a). A modified plan is also only available if §§ 1322(a), 1322(b), 1325(a) and 1323(c) of the bankruptcy code are met. § 1329(b)(1); *In re Davis*, 34 B.R. 319, 320 (Bankr.E.D.Va. 1983). *See In re Perkins*, 111 B.R. 671, 673 (Bankr.M.D.Tenn.1990) (the bankruptcy court refused to modify the plan because it did not satisfy 11 U.S.C. § 1325(a)(6)).

---

**10.** This opinion has been circulated pursuant to Circuit Rule 40(f) among the judges of this court in regular active service. No judge favored a rehearing en banc on the question of a conflict with *In re Arnold*, 869 F.2d 240 (4th Cir.1989).

A further limit to meaningless motions comes under Section 1325(a)(3), which requires that the plan be proposed in good faith. For example, lack of good faith can be shown by manipulation of code provisions. *In re Goeb,* 675 F.2d 1386 (9th Cir.1982). In *In re McNulty,* 142 B.R. 106, 110 (Bankr. D.N.J.1992), the court denied modification finding that the modified plan had not been proposed in good faith. Moreover, all proposed modifications need not be approved and in practice not all modifications are approved. *West v. Costen,* 826 F.2d 1376, 1379 (4th Cir.1987) (bankruptcy court denied a creditor's petition for modification.).

■ In sum, the clear and unambiguous language of § 1329 negates any threshold change in circumstances requirement and clearly demonstrates that the doctrine of res judicata does not apply. This is not to say that in determining whether to modify a bankruptcy plan, the bankruptcy court may not consider whether a change in circumstances occurred; but, § 1329 and the doctrine of res judicata do not require a minimal showing of a change in circumstances. Accord *In re Powers,* 140 B.R. 476, 478 (Bankr. N.D.Ill.1992); *In re Perkins,* 111 B.R. 671, 673 (Bankr.M.D.Tenn.1990). *See, e.g., In re Larson,* 122 B.R. 417, 420 (no minimal showing to modify a Chapter 12 bankruptcy plan).

### B. Modification of "Percentage Plan" to a "Pot Plan"

■ Witkowski further claims that the bankruptcy court could not modify the bankruptcy plan to change the approved "percentage plan" to a "pot plan." This presents the question of when a modification is appropriate. "Section 1329(a) does not explicitly state what justifies a modification...." *In re Arnold,* 869 F.2d 240, 241 (4th Cir.1989). *See also, In re Fitak,* 92 B.R. 243, 248 (Bankr.S.D.Ohio 1988) ("Section 1329(a) provides little, if any guidance as to the standard to be applied by a bankruptcy court in determining whether a request for a post-confirmation modification of a Chapter 13 plan should be granted."). Rather, § 1329(a) is phrased in the permissive language—"the plan *may* be modified." *See Hawkins v. Landmark Finance Co.,* 727 F.2d 324, 326 (4th Cir.1984) (finding that Section 350(b) of the bankruptcy code which provided that "[a] case may be reopened" is permissive) *followed* in *Matter of Shondel,* 950 F.2d 1301, 1304 (7th Cir.1991). Because modification under § 1329 is discretionary, our review is limited to a determination of whether the district court abused its discretion in modifying the plan. *Hawkins,* 727 F.2d at 326–27; *Shondel,* 950 F.2d at 1304.

The question then is whether the bankruptcy court abused its discretion by modifying the bankruptcy plan to provide a 19% return to unsecured creditors over the originally estimated 47 months. In granting the modification, the bankruptcy court first noted that the bankruptcy code anticipated a "pot plan." In other words, the court expected a debtor to contribute a certain amount or "pot" of money which would be distributed to creditors. The court then reasoned that the proposed modification was necessary to properly disburse this "pot" to the creditors. "This court will not set aside a trial court's discretionary order unless it is clear that no reasonable person could concur in the trial court's assessment of the issue under consideration." *Patterson v. Coca–Cola Bottling Co.,* 852 F.2d 280, 283 (7th Cir.1988). We cannot say that the bankruptcy court's assessment of the situation was unreasonable. *See In re Casper,* 153 B.R. 544 (Bankr. N.D.Ill.1993); *In re Bostwick,* 127 B.R. 419, 420 (Bankr.N.D.Ill.1991).[11]

11. Witkowski also argues that the bankruptcy court erred in finding that the bankruptcy code favors "pot plans" over "percentage plan" and, therefore, its rationale for modification is inappropriate. We disagree and note that approval of a percentage plan in the first instance is troubling. Section 1322 of the Bankruptcy Code requires the debtor to provide all disposable income to the plan for three years, five years if cause exists, if a creditor objects to the plan. Disposable income is income not reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor. § 1325(b)(2)(A). A percentage plan, by its very nature, does not seem to constitute a plan by which the debtor will contribute all disposable income to the plan because the debtor may retain a portion of disposable income if fewer than anticipated claims are filed. Rather, to fulfill the disposable income requirement, it would seem that any surplus of funds must be funneled into the plan, not returned to the debtor.

## C. Cause Requirement

As we have determined, a modification of a plan under § 1329 does not require any minimal showing of a change in circumstance. Nor does it prevent modification of a "percentage plan" to a "pot plan." Any modification, however, must meet all of the requirements of § 1329 including the conditions set out in Sections 1322, 1323, and 1325. Witkowski claims that his bankruptcy plan as modified failed to satisfy § 1329(c). Witkowski does not challenge the fulfillment of the other requirements. Accordingly, we need only consider whether the plan satisfies the "cause" requirement under § 1329(c). Section 1329(c) provides that:

A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Under the modified plan, Witkowski was to continue making payments for the original 47 month term. Accordingly, § 1329(c) required the bankruptcy court to determine whether cause existed for the plan to exceed three years. The bankruptcy court concluded that cause existed for the plan to exceed 36 months so Witkowski could provide a meaningful dividend to general unsecured creditors. Whether cause existed for the plan to exceed three years is a question of fact which we review under the clearly erroneous standard. Rule 8013. *See, e.g., In re Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991) (whether particular facts support the reopening of a case under Section 350 of the bankruptcy code is a question of fact). "A strong presumption exists in favor of the trial court's findings of fact, . . ." 9 *Collier on Bankruptcy* ¶ 8013.03 at 8013–5, citing *Crews v. Cloncs*, 432 F.2d 1259 (7th Cir.1970). Given that the only modification sought was an increase in the percentage paid unsecured creditors while leaving the other terms unchanged, we conclude that the bankruptcy court was not clearly erroneous in finding that cause existed for the payments to exceed 36 months.

Witkowski argues in rebuttal that the bankruptcy court did not make a finding of cause at the modification hearing. Rather, he claims, the bankruptcy court merely concluded that since cause existed at the confirmation hearing cause also existed at the modification hearing.[12] Notwithstanding Witkowski's contentions to the contrary, a review of the transcript from the modification hearing demonstrates that the bankruptcy court found cause to approve the modified plan with a 47 month term. During the hearing, Witkowski asked the court to define the cause. After determining that the original cause was to provide a meaningful payment to general unsecured creditors, the court reasoned that the same "cause" existed to support approval of a modified plan of the same duration as the original plan. That the court actually considered whether cause existed is clear from the court's statement that nothing set 10% as the minimal percentage required to provide a meaningful dividend. This discussion demonstrates that the court was considering whether the same "cause"

---

Similarly, approval of a "percentage plan" may not comply with Section 1325(a) of the bankruptcy code, which requires the debtor to propose a plan in good faith. In determining whether good faith exists the court considers, among other things, whether the plan demonstrates a "fundamental fairness to creditors." *In Matter of Smith*, 848 F.2d 813, 817 (7th Cir. 1988). A bankruptcy plan which allows a debtor to retain a windfall created when unsecured creditors fail to file claims does not seem to treat creditors with fundamental fairness. Thus, a percentage plan may also lack the essential good faith.

The validity of percentage plans, however, is not before us today. We merely note the potential problems such plans have with the "disposable income" and "good faith" requirements of the bankruptcy code to refute Witkowski's claim that the district court abused its discretion in finding that the code favors "pot plans" over "percentage plans." This discussion further serves to highlight the propriety of the bankruptcy court's modification of Witkowski's "percentage plan" to a "pot plan."

12. The trustee responds by asserting that since the length of the plan was not being modified no additional finding of cause was required. The plain language of § 1329(c), however, clearly requires a bankruptcy court to make a determination that cause exists for the modified plan to exceed three years.

could maintain a 47–month term when the dividend would increase to 19%. Accordingly, we reject Witkowski's claim that the bankruptcy court failed to make a finding of cause. In this situation the only modification was an increase in the percentage paid to unsecured creditors. The debtor paid the same amount of money and made the same number of payments. Even had the bankruptcy court not made a specific finding of cause, it would seem obvious that in this case avoiding an additional windfall to the debtor would constitute sufficient cause to maintain the original 47 month plan.[13] *See Casper,* 153 B.R. at 545, quoting *In re Casper,* 89 B 21395, slip op. at 4 (Bankr.N.D.Ill. August 7, 1992) ("The Court will not allow the Debtors to receive a windfall due to an unanticipated change in the Debtor's ability to pay their creditors.").

### III. Conclusion

Section 1329 does not require any threshold requirement for a creditor, debtor or trustee to seek modification of an approved bankruptcy plan. The common law doctrine of res judicata also does not impose any minimal showing of a "change in circumstance." Rather, a creditor, debtor or trustee has the absolute right to seek modification of a bankruptcy plan after its confirmation but before completion of the plan payments. Whether the modification will be granted is within the bankruptcy court's discretion. It is not an abuse of that discretion to modify an approved "percentage plan" thereby changing it to a "pot plan." The bankruptcy court also did not clearly err in finding that cause existed for the modified plan to exceed 36 months. For these and the forgoing reasons, we

AFFIRM.

---

**13.** We also note that it was permissible for the bankruptcy court to consider the "cause" which existed for the original confirmed plan to exceed 36 months; § 1329 does not prohibit a bankruptcy court from considering a prior determination of cause.