In re Dorothea T. BAINES, Debtor.

In re Daral D. Harris, Debtor.

In re William Lehr and Paula Lehr, Debtors.

Nos. 00–30670, 00–33113, 00–33319.

United States Bankruptcy Court, S.D. Illinois, East St. Louis Division.

June 11, 2001.

James W. McRoberts, Chapter 13 Trustee, Belleville, IL, for Creditor–Objector.

James Haller, The Bankruptcy Center, Belleville, IL, for Debtors.

### ENTRY DENYING TRUSTEE'S MOTIONS FOR SPECIAL DISTRIBUTION

JAMES K. COACHYS, Bankruptcy Judge.

In each of the above-referenced bankruptcy cases, the Chapter 13 Trustee ("Trustee") has filed a Motion for Special Distribution (the "Motions"). In the Motions, the Trustee argues that certain proceeds-included in the Bankruptcy Code's definition of "disposable income" pursuant to this Court's decision in *Watters v. McRoberts*, 167 B.R. 146 (Bankr.S.D.Ill. 1994)—should be paid solely to the Debtors'[1] unsecured creditors. The Trustee further asks that the subject proceeds be paid to these creditors immediately upon the Trustee's receipt of them, notwithstanding the distribution scheme set forth in the Debtors' plans.[2] All three Motions drew an objection from the relevant Debtor(s) and, in some instances, certain secured creditors.

The Court asked the parties to brief their respective positions and conducted an oral argument on the matter on April 27, 2001. Having reviewed the parties' briefs and supporting documents and considered their various arguments, the Court now

---

1. The individual debtors herein, Dorothea T. Baines, Daral D. Harris and William and Paula Lehr are all represented by the same counsel, James Haller. The debtors will be referred to, depending on the context, either by their surname or as "Debtor(s)."

2. Each of the plans at issue provide for plan payments in the following order: (1) administrative claims, (2) past due real estate taxes, (3) home mortgages, (4) current child support and maintenance, (5) executory contracts and leases, (6) other secured claims, (7) priority claims, (8) general unsecured claims and (9) certain post-petition claims if allowed under 11 U.S.C. § 1305.

issues the following Entry. For the reasons stated below, the Court denies the Trustee's Motions for Special Distribution.

## Statement of Facts

### 1. In re Baines

Dorothea T. Baines commenced her Chapter 13 case on March 10, 2000, and a plan was confirmed on October 31, 2000. According to the plan, Baines is required to pay the Trustee $830.00 per month for 8 months, then $855.00 per month for 52 months. The plan base is $51,100.00. Unsecured creditors must receive at least $1,020.00 for the plan to complete. The plan also provides that an unknown amount from a then-pending class action lawsuit would be submitted to the trustee as received on an annual basis.

On December 1, 2000, the Debtor received a check in the amount of $414.26, which represented a periodic partial payment in the class action lawsuit. On December 5, 2000, the Trustee filed his Motion for Special Distribution, requesting that the proceeds from the class action lawsuit be directed to Baines' general unsecured creditors. Baines objected, however, to this Motion, arguing that the proposed modification to the plan is contrary to the Code.

### 2. In re Harris

Daral D. Harris commenced his Chapter 13 case on October 26, 2000, and his plan was confirmed on March 23, 2001. According to the plan, Harris is required to pay the Trustee $1,340.00 through December of 2000, $200.00 per month for five months, and $1,303.00 per month until all allowed claims are paid in full, total plan length not to exceed 60 months. The plan further provided that one-half of a then-unknown amount in worker's compensation proceeds will be paid to the Trustee and included as disposable income.

On March 5, 2001, the Trustee received a check in the amount of $636.57, which represented one-half of the net worker's compensation recovery. The Trustee then filed his Motion for Special Distribution, again arguing that these proceeds should be distributed solely (and immediately) to Harris's general unsecured creditors. Harris objected to this Motion.

### 3. In re Lehr

William and Paula Lehr commenced their Chapter 13 case on November 14, 2000. A plan has been proposed but remains unconfirmed due to an outstanding Objection to Confirmation filed by the Trustee regarding the plan's feasibility. Under the terms of the proposed plan, the Lehrs must pay the Trustee $675.00 per month for 60 months. The plan base is $40,500.00. The plan also provides that one-half of an unknown amount in worker's compensation proceeds will be paid to the Trustee and included as disposable income.

On February 20, 2001, the Trustee received a check in the amount of $1,750.08, representing one-half of the net worker's compensation proceeds. The Trustee filed a Motion for Special Distribution, once again arguing that these proceeds should be paid immediately and solely to the Lehrs' general unsecured creditors. Again, this drew an objection from the Lehrs and also from Union Planters Bank, N.A. The Lehrs are currently behind on their plan payments and still do not have a confirmed plan.

## Discussion and Decision

The Trustee maintains that his Motions should be granted according to at least one of several arguments: (1) that this Court's decision under *Watters* mandates a special distribution to unsecured creditors; (2) that a modification of the plans to include a special distribution is authorized under 11 U.S.C. § 1329(a); and (3) that equity demands such a result. For the reasons set

forth below, the Court finds each of these arguments to be unavailing.

### 1. The Watters Decision

The Trustee first argues that this Court's decision in *Watters*, 167 B.R. at 146, mandates a special distribution to the Debtors' unsecured creditors. In *Watters*, the Court was asked to decide whether the exempt portion of a personal injury award, not yet recovered at the commencement of the case, should be included in the debtors' "disposable income" for purposes of 11 U.S.C. § 1325(b)(2). The debtors' proposed plan provided that an unrecovered and unliquidated personal injury award would be included in their disposable income upon its receipt. *Id.* However, the debtors also asserted a $7,500.00 personal property exemption in the award. *Id.* The Chapter 13 trustee objected to confirmation of the plan, arguing that *all* of the proceeds had to be included in the debtors' disposable income and applied, as required by the Code, to plan payments. *Id.* at 147.

In sustaining the trustee's objection, the Court looked to the definition of "disposable income" set forth in 11 U.S.C. § 1325(b)(2), which provides in relevant part that " 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ." *Id.* at 147. The Court emphasized that Section 1325(b) does not define "disposable income" by reference to its exempt status. *Id.* (citing *In re Schnabel*, 153 B.R. 809, 815–16 (Bankr.N.D.Ill.1993))

("without an express or even implicit limitation in § 1325(b) on 'income' relating to its exempt status, this Court will not impose one."). Because the debtors had other sources of income sufficient to pay their reasonable support and that of their dependents, their entire personal injury recovery had to be included in disposable income and disbursed to their creditors. *Id.*[3]

The Trustee maintains that *Watters* stands for the proposition that certain types of income, e.g., personal injury awards, social security benefits and worker's compensation, which are otherwise exempt under Chapter 7 but included in the definition of "disposable income," should be paid solely to the debtor's *unsecured* creditors. This Court disagrees with such an interpretation of *Watters*. To be included in the definition of "disposable income" under 11 U.S.C. § 1325(b)(2) merely means that the income is available to fund a Chapter 13 plan. Neither the Code nor case law support the Trustee's argument that certain types of disposable income are intended to benefit any one class of creditors at the exclusion of any other. Rather, the income must be applied to plan payments, subject to the terms of the Chapter 13 plan. While the class action/worker's compensation proceeds at issue here constitute disposable income, as both *Watters* and the Debtors' plans indicate, no special distribution to the Debtors' unsecured creditors is warranted. Rather, the proceeds must be applied pursuant to the

---

**3.** *Watters* is consistent with opinions issued by other jurisdictions. Under a similar analysis, various courts have concluded that income otherwise exempt under Chapter 7 of the Code can and must be included in a Chapter 13 debtor's disposable income. Thus, social security benefits, tax refunds, personal injury recoveries, worker's compensation, pension funds, social security and welfare benefits, and unemployment compensation are considered to be disposable income and must be applied to the plan. *See In re Freeman*, 86 F.3d 478 (6th Cir.1996); *In re Hagel*, 184 B.R. 793 (9th Cir. BAP 1995); *In re Minor*, 177 B.R. 576 (Bankr.E.D.Tenn.1995); *In re Schnabel*, 153 B.R. 809 (Bankr.N.D.Ill.1993); *In re Sassower*, 76 B.R. 957 (Bankr.S.D.N.Y. 1987).

distribution scheme set forth in the Debtors' plans.

### 2. Modification under Section 1329(a)

The Trustee also contends that he · is entitled, under 11 U.S.C. § 1329(a), to modify the Debtors' Chapter 13 plans to allow for a special distribution of the subject proceeds to their unsecured creditors. The Debtors counter that the Trustee is bound by the terms of the confirmed plans. While the Court agrees that the Trustee has standing to move for modification, it disagrees that the modification proposed by the Trustee is appropriate.

■ Section 1329(a) of the Code provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

Courts have struggled with the appropriate standard for plan modifications, notwithstanding the arguably unambiguous (although flexible) language of the above provision. *See In re Witkowski,* 16 F.3d 739, 742 (7th Cir.1994). Specifically, some courts have held that for a modification to be allowed under Section 1329(a), the movant must make a threshold showing that there has been a substantial and unanticipated change in the debtor's circumstances. *See, e.g., In re Weissman,* 126 B.R. 889, 893 (Bankr.N.D.Ill.1991); *In re Bereolos,* 126 B.R. 313, 326 (Bankr. N.D.Ind.1990). Still other courts have held that the common law doctrine of · *res judicata* requires a substantial and unanticipated change in circumstances to warrant a plan modification. *See, e.g., In re Arnold,* 869 F.2d 240, 241 (4th Cir.1989). The Seventh Circuit, however, has rejected this particular standard and has instead held that a debtor, trustee, or unsecured creditor has an unfettered right to seek modification of a confirmed plan, provided however, that the modification falls under one of the categories set forth in Section 1329(a). *Witkowski,* 16 F.3d at 745–46.

■ Based upon *Witkowski,* the Court rejects the Debtors' proposition that the confirmed plans are necessarily binding on the Trustee, thereby preventing any modification. However, the Trustee must show that his requested modification—the proposed "special distribution"—falls under one of Section 1329(a)'s three categories and otherwise satisfies the Code. At oral argument, the Trustee suggested that the modification falls under either subpart (1) or (2) of Section 1329(a); however, the Court disagrees that the proposed special distribution falls under either of these categories. Subpart (1) contemplates a situation in which a creditor is to receive more or less than the amount set forth in the plan, while subpart (2) contemplates an extension or reduction in the length of the plan. Neither category, however, contemplates modification of the distribution scheme.[4]

*Witkowski,* 16 F.3d at 746.

---

**4.** The Court further notes that modification under Section 1329 is purely discretionary.

■ Even assuming that the Trustee's proposed modification fits under one of Section 1329(a)'s categories, he has failed to show that the proposed modification otherwise complies with the Code, specifically Section 1322. *See id.* at 745 (modified plan is only available if Section 1322(a), 1322(b), 1325(a) and 1323(c) of the Code are met); *see also In re Nolan,* 232 F.3d 528, 530 (6th Cir.2000). Section 1322(b) sets forth various permissive provisions that a plan may include: According to Section 1322(b)(4), a debtor may *choose,* at his sole discretion, to pay his unsecured and secured creditors contemporaneously. It follows, then, that a debtor may opt to satisfy his secured creditors first. More often than not, a debtor chooses this latter approach; that way, if the case is dismissed or fails, the debtor may be in a better position to keep certain property, e.g., his home or car. While the Trustee takes offense at this "tactic," *see* discussion, sub-part 3, *infra,* this is entirely acceptable under the Code.

■ Neither the trustee nor any unsecured creditor can compel a Chapter 13 debtor to exercise his Section 1322(b)(4) option. For that reason alone, the Trustee cannot force the Lehrs to modify their as-yet unconfirmed plan to provide for the contemporaneous payment of both their secured and unsecured creditors. It stands to reason, then, that the Trustee cannot force either Baines or Harris to reorder their distribution scheme upon an increase in their disposable income during the life of their confirmed plans. The Trustee, according to Section 1329(a)(1) and (2), may move to modify the plan to increase plan payments or plan length, thereby ultimately putting more money into the hands of the unsecured creditors, or decrease plan length, thereby putting money into their hands sooner. Short of this, however, the Trustee may not force the Debtors to do, through modification, what he cannot force them to do at plan confirmation.

### 3. Equity

Finally, the Trustee raises several equitable arguments in support of his Motions. The Trustee has expressed concern that without a special distribution to the Debtors' unsecured creditors, they have every incentive to either dismiss or convert their cases after paying off their secured creditors but before plan completion, thereby leaving their unsecured creditors with empty pockets. The Court agrees that this is a legitimate risk, but it is not a risk unique to this context, nor one that ultimately influences the Court's decision.

■ A case under Chapter 13, at least in its current form, is purely voluntary, as is its conversion or dismissal. *See* 11 U.S.C. § 1307; *Barbieri v. RAJ Acquisition Corp. (In re Barbieri),* 199 F.3d 616 (2nd Cir.1999). Nevertheless, many debtors have good incentive to pursue and complete a Chapter 13 case in order to receive the various protections of the Code, as well as the unique benefits of a Chapter 13 discharge. Given Chapter 13's voluntary nature, an unsecured creditor must accept the risk that a case will not be commenced in the first place or that it will never complete. Even assuming that a plan does complete, most debtors are only able to pay a small dividend to their unsecured creditors. Thus, the possibility in the present cases that unsecured creditors will never recover any distribution from the subject proceeds is not unusual, nor given the structure and purpose of the Code, inequitable.

Regardless of whether a debtor foregoes bankruptcy protection or files a petition under Chapter 7 or Chapter 13 of the Code, unsecured creditors often have little chance of recovery. Outside of bankrupt-

cy, a creditor is forced to weigh the expense of obtaining and enforcing a judgment against a debtor who may prove evasive or judgment proof. In bankruptcy, an unsecured creditor is often faced with a "no asset" Chapter 7, which offers no dividend to unsecured creditors, or with the marginal hope of payment offered by a Chapter 13 case. In any event, each of these possibilities offer its own grim reality.

The Court is not without sympathy for unsecured creditors. However, from the Court's perspective, Chapter 13 is the best-case scenario for them in that it at least offers some hope of payment, without the high overhead of extra-bankruptcy remedies. But given its voluntary nature, this hope is not a guarantee. The risks inherent in every Chapter 13 case lead the Court to reject the Trustee's equitable arguments. The Trustee's concerns, while understandable, simply do not compel the Court to authorize the proposed special distributions. Based on the foregoing, the Court DENIES the Trustee's Motions for Special Distribution in all three of the subject cases.[5] The Trustee is ordered to make his distributions according to the distribution schemes set forth in each of the subject plans.

IT IS SO ORDERED.

---

5. As an alternative to the proposed special distributions, the Trustee has asked this Court to alter the terms of the "Standard Plan" used in this jurisdiction to include a provision that directs *Watters*-type income, e.g., personal injury awards, worker's compensation, social security benefits, etc., be distributed solely and immediately to the debtor's unsecured creditors. The Court declines to consider this request as it is a policy issue that would be better addressed by the Chief Judge of the Bankruptcy Court in this District.