**In re Patrick J. GUERNSEY, Diane K. Guernsey, Debtors.**

**Bankruptcy No. 3–90–2429.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Dec. 11, 1995.

Ian Traquair Ball, Minneapolis, MN, for Debtors.

Stephen Creasey, Minneapolis, MN, for Trustee J.J. Mickelson.

Lee Mosher, Golden Valley, MN, for Objecting Party to Modification of Chapter 13 Plan.

## ORDER

DENNIS D. O'BRIEN, Chief Judge.

This matter came on for hearing on September 18, 1995, on Debtors' motion to further modify their Modified Chapter 13 Plan, dated July 7, 1992, and confirmed September

11, 1992. An objection was filed by City–County Federal Credit Union, an unsecured creditor. The Court, having heard and considered the evidence and arguments presented at the hearing; having reviewed the post-hearing briefs filed by the parties; and, being fully advised in the matter; now makes this **Order** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

The Debtors filed their petition under Chapter 13 on June 4, 1990. An order confirming their initial 5–year plan was entered on August 9, 1990. That plan provided for monthly payments to be made by the Debtors in the amount of $550.00. Unsecured creditors were to be paid a stated "Undet." percent of their claims, which was estimated at $25,033. The amount to be paid to secured and priority creditors was estimated at $16,429. The total stated amount to be paid into the plan was $33,000.

The initial plan was modified by the Modified Chapter 13 Plan dated July 7, 1992, confirmed by order entered September 11, 1992. The Modified Plan reduced the monthly payments to $180.00; and, it was a "percentage plan," with respect to unsecured creditors, that was to pay 14 percent of the allowed amounts of the filed claims. The stated amount to be paid the unsecured class was $4,210. The stated amount to be paid secured and priority creditors was $12,861. The total amount stated to be paid under the Modified Plan was $17,071.

All payments were made as scheduled under the confirmed Modified Plan, but the Trustee allocated the payments to a secured debt in excess of the amount stated. That resulted in a potential shortfall from the 14% required to be paid to unsecured creditors. The Debtors discovered the situation in May, 1995. The last payment under the Modified Plan was due two months later, in July. The Debtors filed their motion to further modify the Modified Plan on May 25, 1995. The new proposed modification simply provides that the last two scheduled payments be made in the scheduled amounts of $180.00 each; and, that the total amount to be paid to unsecured creditors be reduced to $2,127, or a 7% distribution.

City–County Federal Credit Union, an unsecured creditor, objected to the proposed modification. The Credit Union's objections were based on its assertions that: no amended schedules had been filed; the moving papers contained insufficient information to allow the Court and interested parties to make an informed determination whether the proposed modification was justified; and, issues of good faith and "best interests of creditors" arising under 11 U.S.C. § 1325(a)(3) and (a)(4), could not be determined.

Hearing was initially held on August 10, 1995. No significant current financial information was filed or served by the Debtors prior to the hearing.[1] The Court ordered the matter continued for evidentiary hearing, which was then held on September 18. No amended schedules were filed prior to that hearing, either. Patrick Guernsey testified, generally, that he was unable to pay the additional $2083, necessary to consummate the 14 percent Plan. He offered little specifics regarding his income and expenses, and presented no balance sheet information. Diane did not appear at the hearing, and filed nothing.[2] The parties were allowed additional time to file briefs, all of which have now been submitted.

## II.

The Debtors' 1992, Modified Plan is a percentage plan. Their obligation under the Modified Plan is to pay unsecured creditors 14% of the allowed amounts of the claims. See: *In re Jordan*, 161 B.R. 670, 671 (Bankr.D.Minn.1993). The fact that the Debtors have made all monthly payments in the scheduled amounts does not result in full performance of the obligation.

---

1. Patrick Guernsey filed an affidavit on July 7, 1995, wherein he stated that no assets had been acquired by either Debtor since the Chapter 13 filing that would result in a larger distribution to creditors in a Chapter 7 case.

2. The Guernseys divorced in 1992, apparently precipitating the earlier modification.

Recognizing this, the Debtors seek further modification at the end of the Plan to simply make it conform to the Trustee's actual distributions. They seek the modification based on their assertion that the Trustee misapplied a portion of their payments, or that the Debtors miscalculated the amount due the secured creditor; and, that there is insufficient time left under the Plan to make up the resulting shortfall to the unsecured class.[3] The Debtors claim they are unable to make the lump sum payment that would be required to satisfy the amount due the unsecured class, which is $2083.[4]

11 U.S.C. § 1329 provides:

§ 1329. Modification of plan after confirmation.

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

It has been held in this district that debtors must show an adverse change in financial circumstances to obtain approval of proposed plan modification that seeks to reduce confirmed plan payments over the objection of the affected class or classes of creditors. See: *In re Mary Boerbon Nelson,* 189 B.R. 748 (Bankr.D.Minn.1995). The Debtors argue that § 1329 does not provide any threshold requirements for plan modification, and that they have an absolute right to request modification between confirmation and completion of a plan. Accordingly, the Debtors claim that § 1329(a) allows them to amend their plan, to reduce their obligations, for reasons unrelated to any change in their financial circumstances. They cite *Matter of Witkowski,* 16 F.3d 739 (7th Cir.1994).

The *Witkowski* court ruled that a trustee could obtain modification of a debtor's percentage plan, where the allowed amounts of unsecured claims were substantially less than anticipated, thereby justifying an increase in the percentage to be paid. The debtor had objected to the proposed modification, arguing that the trustee was required to show substantial change in the debtor's financial circumstances to obtain approval of the modification; and, that there had been no change. The court disagreed, stating:

By its terms, § 1329 does not provide for any threshold requirement to modify a bankruptcy plan. *In re Powers,* 140 B.R. 476, 478 (Bankr.N.D.Ill.1992); *In re Perkins,* 111 B.R. 671, 673 (Bankr.M.D.Tenn. 1990) ("changed circumstances, unanticipated or otherwise, is not imposed by the code as a threshold barrier to access to modification under § 1329"). See also *In re Larson,* 122 B.R. 417, 420 (Bankr.D.Ida-

---

**3.** The motion was filed two months prior to expiration of the five-year period. Chapter 13 plans are statutorily limited to five years duration. See: 11 U.S.C. § 1322(d).

**4.** The evidence, however, was insufficient to establish that. Patrick Guernsey testified generally regarding his income and expenses, but produced no significant specific financial information regarding his assets and liabilities or cash flow. Diane Guernsey did not appear in the proceeding.

ho 1991) (refusing to impose a threshold requirement on the similarly worded modification statute which applies to Chapter 12 bankruptcies). Rather, according to the terms of § 1329, the debtor, the trustee or an unsecured claimholder has an absolute right to request modification of the plan between confirmation of the plan and completion of the plan payments. § 1329(a)(2). *Powers,* 140 B.R. at 478; *Perkins,* 111 B.R. at 673. Further, § 1329 allows the trustee to do exactly what he did in this situation—increase the amount of payments on claims of a particular class. § 1329(a)(1); *Powers,* 140 B.R. at 478. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Mat-*

*ter of Sinclair,* 870 F.2d 1340, 1341 (7th Cir.1989) (quoting *Burlington North. R.R. v. Oklahoma Tax Comm.,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987)).

*Witkowski,* 742.

It has been said that *Witkowski* is contrary to the law of the Fourth Circuit, stated in *In Re Arnold,* 869 F.2d 240 (4th Cir.1989). In that case, the court held that a substantial change in financial circumstances justified a plan modification sought by an unsecured creditor, that would increase payments under a previously confirmed plan over the objection of the Debtor. The holdings in *Witkowski* and *Arnold* are not irreconcilable.[5]

The two cases, and the cases that support the respective positions,[6] implicitly recognize

**5.** One court observed: "There may be little practical difference between those two positions. The plain language of subsection (3) of § 1329(a) requires a post-confirmation change in circumstances, i.e. payment on the claim outside of the plan. While subsections (1) and (2) contain no such requirement, the significance of that fact is limited by § 1329(b)(1), which requires that the modified plan comply with § 1325(a). If, for example, a creditor seeks to modify the plan to increase payments to the unsecured creditor class under § 1329(a)(1), the modification cannot be approved unless the debtor has the ability to make the increased payments. See § 1325(a)(6). If the debtor has satisfied the obligation to use all disposable income to fund the plan, see § 1325(b), the creditor's modification will be disapproved unless there has been a post-confirmation improvement in the debtor's financial circumstances. Conversely, any effort by the debtor to reduce payments is circumscribed by the good faith requirement of § 1325(a)(3), and possibly by the disposable income test of § 1325(b). [FN10] FN10. Section 1329(b)(1) specifies that the requirements of § 1325(a) apply to the modification but is silent as to § 1325(b). However, § 1325(a)(1) requires compliance with the provisions of chapter 13, which of course include § 1325(b). Arguably, then, an objection to approval of a modification could implicate § 1325(b). *In re Klus,* 173 B.R. 51, 58 (Bankr. Conn.1994).

**6.** *In re Klus,* supra, catalogues the cases on the issue in the following discussion. "Those courts concluding that modification is permissible under the plain language of the statute holding that no threshold showing of a change in financial circumstances is necessary. See *Matter of Witkowski,* 16 F.3d 739, 746 (7th Cir.1994). Accord *In re Powers,* 140 B.R. 476, 479 (Bankr.N.D.Ill. 1992); *In re Perkins,* 111 B.R. 671, 673 (Bankr. M.D.Tenn.1990). Those courts note that resort to legislative history to support such a requirement is unwarranted. See *In re Perkins,* supra,

111 B.R. at 673. They further conclude that § 1329 is a congressional exception to res judicata, see *Matter of Witkowski,* supra, 16 F.3d at 745, and they reject the change in circumstances analysis adopted by other courts as an inappropriate judicial response to the 1984 amendment to § 1329 which permits the trustee and unsecured creditors to seek post-confirmation modifications. *In re Perkins,* supra, 111 B.R. at 673. It is important to note, however, that their rejection is qualified by their recognition that although a change in circumstances is not mandated as a condition precedent to modification, it is nonetheless relevant evidence to the issue of whether the elements of § 1329(b)(1) are satisfied, e.g., such a change may be necessary to satisfy the good faith, feasibility and best interests of the creditors tests contained in § 1325(a). See *In re Perkins,* supra, 111 B.R. at 673.

The competing line of cases holds that "[t]he doctrine of res judicata limits the permissible grounds for modification of a confirmed plan." *In re McNulty,* 142 B.R. 106, 109 (Bankr.D.N.J. 1992); accord *In re Algee,* 142 B.R. 576, 580–582 (Bankr.D.Dist.Col.1992); *In re Weissman,* 126 B.R. 889, 893 (Bankr.N.D.Ill.1991); *In re Fitak,* 92 B.R. 243, 249–50 (Bankr.S.D.Ohio 1988), aff'd, 121 B.R. 224 (S.D.Ohio 1990). Those courts note that but for the application of res judicata to the order confirming chapter 13 plans, § 1327(a) "would be rendered meaningless, with any confirmation issue subject to being revisited at whim." *In re Algee,* supra, 142 B.R. at 580. In order to give full effect to § 1327(a) and its res judicata consequences, those courts conclude that modification under § 1329(a) should be ordered only "upon a showing of changed circumstances which affect a debtor's ability to pay," which change could not "have been reasonably anticipated at the time of confirmation by the parties seeking modification." In re Fitak, supra, 92 B.R. at 249, 250 (emphasis in original). Those courts generally require that

that the proponent of a modified Chapter 13 plan must demonstrate cause to obtain approval of a proposed plan modification over the objection of adversely affected parties. In *Witkowski*, where the proponent was the trustee, the cause justifying the increased dividends to creditors (without any change in the amount of payments by the debtor) was the unexpected low filings of claims. In *Arnold*, where the proponent was a creditor, the cause that justified increasing the amount of the debtor's payments to be made to the plan, was the substantial increase in the debtor's annual income from $80,000 to $200,000.

In *Witkowski*, change in financial circumstances of the debtor was an irrelevant measure of cause, where a percentage increase was sought without change in the timing or amount of payments to be made by the debtor under the proposed modification. In *Arnold*, where the creditor sought modification that would increase the debtor's payments, the debtor's change in circumstances was a highly relevant measure of cause.[7]

In this case, the Debtors offer as cause to reduce the dividends on the unsecured allowed claims a second time, either: that the Trustee misapplied a portion of the plan payments to a secured creditor; or, that the Debtors miscalculated the allowed amount of the secured claim.[8] Whatever the circumstance, the situation does not present cause

to further modify the Modified Plan, especially at the end of the Plan period.

 The provisions of a confirmed plan bind the debtor and each creditor. 11 U.S.C. § 1327. Whether by reference to the doctrine of *res judicata*, or to more general principles, maintaining the integrity of confirmed plans is important to the scheme of 11 U.S.C. Chapter 13. While it is true that modification of confirmed plans can be sought, as a matter of right, any time before completion of payments, courts have considerable discretion whether to approve proposed modifications. As observed in *Witkowski*:

> First, modifications under § 1329 are not limitless as implied by Witkowski and the cases he cites. Rather, by the express terms of the statute, modifications are only allowed in three limited circumstances to: "(1) increase or reduce the amount of the payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." § 1329(a). A modified plan is also only available if §§ 1322(a), 1322(b), 1325(a) and 1323(c) of the bankruptcy code are met. § 1329(b)(1); *In re Davis*, 34 B.R. 319, 320

---

7. The cases take a different approach in their analysis. *In re Arnold* recognizes that the doc-

the changed circumstances be not only unanticipated, but also "substantial." See *In re Wilson*, 157 B.R. 389, 390–91 (Bankr.S.D.Ohio 1993). Accord *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir.1994); *Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 243 (4th Cir.1989); *In re Solis*, 172 B.R. 530, 532 (Bankr.S.D.N.Y. 1994); *In re Hutchins*, 162 B.R. 1014, 1023 (Bankr.N.D.Ill.1994); *In re Duke*, 153 B.R. 913, 918 (Bankr.N.D.Ala.1993); *In re Bereolos*, 126 B.R. 313, 325 (Bankr.N.D.Ind.1990); cf. *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865, 868 (2d Cir.1983) (suggesting that debtor's post-confirmation job loss and caring for ill mother may have been grounds for modification under § 1329). Under those cases, the movant has the burden of proving the unanticipated, substantial change in circumstances. *In re Weissman*, supra, 126 B.R. at 893". *In re Klus*, 173 B.R. 51, 57, 58 (Bankr.Conn.1994).

trine of *res judicata* would bar a modification, in the absence of unanticipated substantial changes in the debtor's financial situation. *In re Arnold*, 869 F.2d 240, 243 (4th Cir.1989). *In re Witkowski* concludes that the doctrine of *res judicata* does not apply to the 11 U.S.C. § 1329 consideration. But, the *Witkowski* court recognizes that it can be appropriate for courts to consider whether a change in circumstances has occurred in determining whether to approve a proposed modification. *In re Witkowski*, 16 F.3d 739, 746 (7th Cir.1994). Under the facts of that case, change in circumstances of the debtor was an irrelevant measure of cause, because the debtor's scheduled payments under the original confirmed plan were unaffected by the proposed modification.

8. The Debtors offered no evidence, or specific explanation, whether the error was theirs or the Trustee's. Nor did they offer any reason why the unsecured creditors should suffer the consequences of the mistake.

(Bankr.E.D.Va.1983). See *In re Perkins*, 111 B.R. 671, 673 (Bankr.M.D.Tenn.1990) (the bankruptcy court refused to modify the plan because it did not satisfy 11 U.S.C. § 1325(a)(6)).

A further limit to meaningless motions comes under Section 1325(a)(3), which requires that the plan be proposed in good faith. For example, lack of good faith can be shown by manipulation of code provisions. *In re Goeb*, 675 F.2d 1386 (9th Cir.1982). In *In re McNulty*, 142 B.R. 106, 110 (Bankr.D.N.J.1992), the court denied modification finding that the modified plan had not been proposed in good faith. Moreover, all proposed modifications need not be approved and in practice not all modifications are approved. *West v. Costen*, 826 F.2d 1376, 1379 (4th Cir.1987) *In re Witkowski*, 745, 746.

■■■ 11 U.S.C. § 1329 should not be allowed to be used by debtors to "melt down" confirmed plans; nor should it be allowed to be used by disgruntled creditors to harass a debtor. Ordinarily, approval of proposed modifications should be based on substantial changes in circumstances, either of the debtor or of allowed claims, that were unforeseeable at the time of confirmation; and, that either render the existing plan unfeasible, or that make possible substantially enhanced dividends to creditors.

Here, the Debtors have not shown that they experienced any change in their circumstances. Nor have the Debtors shown that the increased payment to the secured creditor was the Trustee's error, rather than the result of their own miscalculation. Accordingly, they have not shown an unforeseeable change in allowed claims.[9] The Debtors have not shown cause sufficient to justify a second modification to the Modified Plan, under 11 U.S.C. § 1329.

### III.

■■■ The motion to approve the proposed modification should be denied for another reason. A proposed plan modification, under 11 U.S.C. § 1329, that would reduce a debtor's obligations under a confirmed plan to the amount already paid, should rarely be approved. Congress afforded a remedy to debtors, who find themselves unable to provide significant future performance under a plan, in 11 U.S.C. § 1328(b). That statute reads:

§ 1328. Discharge

(b) At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

The discharge provided for under 11 U.S.C. § 1328(b), however, is limited to exclude 11 U.S.C. § 523(a) nondischargeable debts. See: 11 U.S.C. § 1328(c).

■■■ A debtor should not be allowed to modify a plan under 11 U.S.C. § 1329 to the amount already paid, in circumstances where the "hardship discharge" afforded by 11 U.S.C. § 1328(b) is otherwise applicable; and, where the use of 11 U.S.C. § 1329 would result in a greater discharge than would be available under 11 U.S.C. § 1328(b). That is the situation here. Debtor Patrick Guernsey has student loan debt that would not be discharged under 11 U.S.C. § 1328(b), but would be discharged under a regular discharge afforded by 11 U.S.C. § 1328(a).[10]

---

9. If the Trustee made an error, there has been no change in circumstances of allowed claims; and, the Debtors have not explained why the Trustee should not be accountable for the mistake, instead of the unsecured creditors.

10. At filing of the case, student loan debt of the type described in 11 U.S.C. § 523(a)(8) was dischargeable under 11 U.S.C. § 1328(a). The statute has since been amended to except this type of debt from discharge under that subdivision. The

**IV.**

Based on the foregoing, it is hereby **ordered** that the Debtors' motion to modify their Modified Chapter 13 Plan, confirmed by order of September 11, 1992, is denied.

debt was already excepted from discharge under 11 U.S.C. § 1328(b), as the statute existed at filing of the Debtors' case.