**In re Carlos Rodriguez VASQUEZ and Elidia Garcia Vasquez, Debtors.**

No. 97–50507–13.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

April 25, 2001.

Wendy McDowell Durbin, Boren & Durbin, Lubbock, TX, for Plaintiff.

Robert Wilson, Chapter 13 Trustee, Lubbock, TX, for Defendant.

### MEMORANDUM OPINION

ROBERT L. JONES, Bankruptcy Judge.

Carlos and Elidia Vasquez, the Debtors, seek approval of a Chapter 13 plan modification that reduces the plan from a sixty month to a forty-six month plan and thereby effectively reduces their obligation to make payments under the plan to the amount already paid. The Trustee objects, contending the modification is not sought in good faith and is more appropriately brought as a request for a hardship discharge under § 1328(b) of the Bankruptcy Code. Hearing on the matter was held on April 9, 2001.

This court has jurisdiction of this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) and (L). This memorandum opinion contains the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and FED. R. BANKR. P. 9014.

### Facts

The Vasquezes filed their Chapter 13 case on May 2, 1997. Their final Chapter 13 plan, filed December 18, 1997, was confirmed January 28, 1998. It provided that the Vasquezes would pay $968.00 each month for sixty months for a total plan payment of $58,080.00. The plan projected a 57.71% payout to unsecured creditors.

On September 14, 1999, the Vasquezes filed their first plan modification seeking to reduce their monthly payments from $968.00 per month to $485.00 per month, thereby reducing their payout from $58,080.00 to $41,658.00. The stated reason for the modification was the Vasquezes' reduced monthly income because of Ms. Vasquez's inability to work from an injury she suffered. This first modification was approved by the court's order entered October 20, 1999. While still a sixty month plan, the modification reduced the payout to unsecured creditors from 57.71% to 20.21%.

The modification before the court was filed March 8, 2001. It recites that Mrs. Vasquez is unable to work because of an injury she sustained in late 1999 and, as a result, the Vasquezes cannot continue making their plan payments. Essentially, the modification stops payments in March, 2001, at forty-six months. As a result, unsecured creditors are projected to receive approximately .01%. In effect, if the modification is allowed, the plan is completed and the Vasquezes will receive their discharge under § 1328(a) of the Bankruptcy Code.

### Discussion

Section 1329(a) and (b) of the Bankruptcy Code states as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

Section 1328(b) of the Bankruptcy Code authorizes a "hardship" discharge to a debtor that has not completed payments under a plan if

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

▮▮▮ By the clear wording of the statute, a hardship discharge may not be obtained unless a modification is "not practicable." From the debtor's perspective, the discharge obtained under a completed, modified plan is certainly preferable to the more limited hardship discharge obtained under § 1328(b).[1] This is especially so if the proposed modification seeks to merely cease payments to the number of payments already made at the time of modification.

While there is scant authority and no circuit court cases on the issue, at least one bankruptcy court has stated that "a proposed plan modification, under 11 U.S.C. § 1329, that would reduce a debtor's obligations under a confirmed plan to the amount already paid, should rarely be approved. Congress afforded a remedy to debtors, who find themselves unable to provide significant future performance under a plan, in 11 U.S.C. § 1328(b)." *In re Guernsey,* 189 B.R. 477, 483 (Bankr. D.Minn.1995). In *Guernsey,* the debtors were attempting to modify a Chapter 13 plan, which was confirmed as a five year plan, just two months prior to completion of the plan. The court first noted that modifications under § 1329 are not limitless but, rather, by the specific terms of the statute, are allowed only in three circumstances: (1) an increase or reduction in the amount of the payments on claims of a particular class provided for by the plan; (2) to extend or reduce the time for such payments; or (3) to alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan. *Id.* at 482. The court noted that a modified plan must also satisfy §§ 1322(a), 1322(b), 1325(a), and 1323(c) of the Bankruptcy Code. *Id.* at 482. Specifically, the court further noted that a proposed modification may run afoul of the good faith requirement of § 1325(a)(3) through a showing that the debtor is attempting to "manipulate" Code provisions. *Id.* at 483. The *Guernsey* court ultimately held that a

---

1. The discharge granted to a debtor that has not completed payments under the plan, *i.e.* the hardship discharge, does not discharge a debtor from any of the debts specified in § 523(a) of the Bankruptcy Code. Section 523 sets forth eighteen different types of claims that are non-dischargeable under the various discharge provisions of the Bankruptcy Code.

The discharge granted upon completion of a Chapter 13 plan is much broader. The only debts that survive the discharge under § 523(a) are described in paragraphs (5)-alimony, maintenance, and support-, (8)-student loans-, and (9)-death or injury caused by the debtor's operation of a motor vehicle while intoxicated.

debtor should not be allowed to modify a plan under § 1329 to the amount already paid in circumstances where the hardship discharge afforded by § 1328(b) is otherwise applicable, and where the use of § 1329 would result in a greater discharge than would be available under § 1328(b). *Id.* at 483. The *Guernsey* court found that the debtor there was required to seek a hardship discharge under such circumstances.

The proposed modification here is not technically prohibited by § 1329(a), which addresses the types of modifications allowed, unless the termination of payments to those already made is construed not to constitute either a reduction of payments to a particular class or a reduction of the time to make payments. *See* § 1329(a)(1) and (2).[2] Such an interpretation would defy a common sense application of the facts, *i.e.* the proposed terms of the modification, to the clear wording of the statute.

■■■ But, the court must consider whether a proposed modification satisfies the good faith requirement of § 1325(a)(3) of the Code. *See* § 1329(b)(1). In considering whether a debtor's Chapter 13 plan satisfies the good faith requirement, the court looks to the "totality of the circumstances." *In re McLaughlin,* 217 B.R. 772 (Bankr.W.D.Tex.1998). In *McLaughlin,* the bankruptcy court engaged in a thorough analysis of the good faith requirement under § 1325(a)(3), holding that the good faith requirement must be met separately from any consideration of other requirements imposed by § 1325(a). The court must examine all of the facts in order to determine the debtor's good faith. *Id.* (citations omitted). The *McLaughlin* court cataloged the various factors that the courts have used in determining the debt-

or's good faith. These include the following: amount of proposed payments, debtor's earning capacity, types of debts sought to be discharged, frequency with which debtor has sought bankruptcy relief, motivation and sincerity of the debtor, debtor's ability to pay, circumstances giving rise to the debts, the presence or absence of objections to the proposed plan, duration of the plan, accuracy of information provided by the debtor, whether the plan is preferential to certain creditors, whether the debts would be dischargeable in Chapter 7, and whether the debtor seeks unfairly to manipulate provisions of the Code. *Id.* (citations omitted).

■■■ As stated by the *McLaughlin* court:

'[i]n examining the factors, the court must bear in mind the public policy that supports the fair and even-handed according of bankruptcy remedies to debtors whose financial distress is not attributable to misconduct on their part, and who deal fairly and openly with the court and creditors in petitioning for relief.' *In re Sitarz,* 150 B.R. 710, 723 (Bankr.D.Minn.1993). Hence, while we must be mindful of the fresh-start purposes of the Code, and while we are not in the business of punishing debtors for bad things they did prior to filing, we must be wary of attempts by debtors to abuse the Code's remedies.

*Id.* (citations omitted). Rather than have the scales tip based on a single, prominent factor, the court should look to all of the applicable factors in a case to determine whether the debtor is proceeding in good faith. *Id.* at 775.

As with any legal issue that is analyzed by a review of the "totality of the circum-

---

**2.** Paragraph (3) of § 1329(a) is not applicable here as it addresses the alteration of the amount of distribution to a creditor to take account of any payment of such claim other than under the plan.

stances," many of the listed factors are not necessarily raised by the facts and circumstances of any one particular case. Such is the case here, as well. In this regard, the factors in the present case that resolve whether the Vasquezes are in fact paying everything they can realistically pay are not challenged here. The Trustee conceded that the Vasquezes would likely be entitled to a hardship discharge under § 1328(b).

 The court recognizes that the good faith analysis overlaps with certain other requirements of § 1328(a), specifically the "best efforts" test (to insure creditors receive as much as they would receive if the case were a Chapter 7 proceeding) of § 1325(a)(4), and the feasibility requirement of § 1325(a)(6) (*i.e.* that the debtor can indeed make all payments provided for under the plan). However, this court considers the Vasquezes' *bona fides* in the context of a proposed modification that, in viewing all the circumstances, makes for a somewhat different analysis. Specifically, the Vasquezes' *bona fides* are considered in light of the ultimate relief they seek. By the modification, the Vasquezes are making virtually no payments on their unsecured debt while still obtaining the broader Chapter 13 discharge. This is the Vasquezes' second modification and is apparently sought for the same reason as was their first modification. The difficulties encountered by the Debtors here—reduced earning capacity resulting from Mrs. Vasquez's injury and thus inability to complete payments under a confirmed plan—appears to be a textbook example of a case for which the hardship discharge provision of § 1328(b) is perfectly suited. By seeking a modification rather than a hardship discharge, the Debtors are indeed manipulating the provisions of the

Code and thus the court must question the Debtors' motivation and sincerity in proposing the modification.[3]

### *Conclusion*

Given the totality of the circumstances here, the court finds that the Vasquezes' modification is not proposed in good faith, is not practicable, and thus must be denied. The court will prepare an order in conformance with this Memorandum Opinion.

---

**3.** The court does not question Debtors' counsel's attempt to test the parameters of allowed modifications. Counsel simply seeks the best possible result for her clients.